**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **IN RE: CITY OF MILLERSVILLE LITIGATION** | ) ) ) | **Master File No. 3:25-cv-00052** |
| **This Document Relates To:** | ) ) | **Judge Crenshaw** |
| **No. 3:25-cv-00576** | ) ) | **Magistrate Judge Newbern** |
| | ) / | |

**DEFENDANTS, STEVE ABRAMOWICZ AND HEARTLAND JOURNAL, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
<u>**MOTION TO DISMISS PLAINTIFFS' CLAIMS**</u>

Defendants, Heartland Journal, LLC and Steve Abramowicz (the "Heartland Defendants"), in support of their Motion to Dismiss, submit the following Memorandum of Law:

<u>**INTRODUCTION AND SUMMARY OF THE ARGUMENT**</u>

Plaintiffs Shawn Taylor and Bryan Morris' sprawling and implausible Complaint [DE 1] attempts to convert two podcast episodes, conducted two weeks apart from each other, into a federal racketeering and civil rights conspiracy. The Heartland Defendants hosted Defendants Kim Kelley and Phillip Drake on two separate August 2024 episodes of the Heartland Journal Podcast (August 5, 2024, and August 19, 2024, respectively). According to the Complaint, these interviews somehow tied them to an elaborate RICO enterprise and conspiracy to violate Plaintiffs' constitutional rights. DE 1 at ¶¶ 400, 409.

Yet, Plaintiffs' eight-count Complaint is rife with threadbare allegations that do not meet the minimum pleading standards required to survive a motion to dismiss. As discussed further below, Plaintiffs' Count I: 42 U.S.C. § 1983 First Amendment violation fails because Plaintiffs do not sufficiently plead that the Heartland Defendants were state actors. Because Plaintiffs do not plead an underlying First Amendment violation, their Count II: Conspiracy to violate 42 U.S.C. §

1

1983 also fails. Plaintiffs' Count III: RICO violation fails because Plaintiffs have not sufficiently pleaded all the prima facie elements of a RICO violation, including "conduct," "enterprise," and "pattern of racketeering activity." Consequently, because Plaintiffs do not plead an underlying RICO violation, their Count IV: Conspiracy to violate RICO similarly fails. Finally, because Plaintiffs' Counts I–IV are brought pursuant to 28 U.S.C. § 1331, the Court should not extend its supplemental jurisdiction to Plaintiffs' state law claims in Counts V–VIII. And, even if the Court does extend its supplemental jurisdiction, Plaintiffs have not pleaded all the prima facie elements of defamation, false light, defamation by implication or innuendo, or civil conspiracy. Thus, Plaintiffs' entire Complaint, as it relates to the Heartland Defendants, must be dismissed.

## FACTUAL BACKGROUND

Due to the sheer length of the nearly six-hundred-paragraph, two-hundred-page Complaint and the *peculiarity* of its allegations, only the relevant allegations relating to the Heartland Defendants bear repeating here. According to the Complaint, when Kelley and Drake were interviewed on the Heartland Journal Podcast, they expanded their conduct to include an "association-in-fact" RICO enterprise with the Heartland Defendants, "whose common purpose was to raise money under false pretenses, promote the unlawful racketeering influenced enterprise of Kelley and Drake, and to launder credibility for Drake's and Kelley's outlaw operations by portraying them as heroic, law-enforcement partners rescuing thousands of trafficked children." DE 1 at ¶ 399.

Plaintiffs further allege that the Heartland Defendants directly participated in the "operation or management" of the RICO "enterprise" by selecting Kelley and Drake as guests, determining the airing schedule and providing vocal prompts for content to steer viewers and listeners to their donation pages, editing and rebroadcasting the solicitations on additional

2

platforms, and sharing in ad-revenue and affiliate income generated by the fraudulent traffic. DE 1 at ¶¶ 404, 406. Finally, Plaintiffs make conclusory allegations that, because the Heartland Defendants used interstate wires, they committed predicate acts of wire fraud under 18 U.S.C. § 1343, forming a pattern of racketeering activity that is both close-ended and open-ended. DE 1 at ¶ 408. Plaintiffs' bare allegations misconstrue legally permissible activity as illegal racketeering.

Next, Plaintiffs allege that both podcast episodes falsely portrayed Morris and Taylor as incompetent, corrupt, and willing to "black-mail pervs" and shield child-traffickers. DE 1 at ¶ 411. Plaintiffs make bare allegations that the Heartland Defendants defamed Plaintiffs with *scienter*, or reckless disregard of their falsity. DE 1 at ¶ 411. The Complaint suggests that the Heartland Defendants' discussion of the Millersville pedophile sting is a matter of public concern involving the actions of the embroiled city of Millerville, its local government, and its police department. DE 1 at ¶ 76, 550.

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare

recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679; *Twombly*, 550 U.S. at 556.

A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. Factual allegations that are merely consistent with the defendant's liability do not satisfy the plaintiff's burden, as mere consistency does not establish plausibility of entitlement to relief, even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

Claims involving fraud or mistake, moreover, must be pled with particularity. Fed. R. Civ. P. 9(b). This means that the time, place, and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent, and the injury must be stated to comply with Rule 9(b) standards. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993). And while Rule 9(b) "allow[s] '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally,'" "'generally' is a relative term." *Iqbal*, 556 U.S. at 686. Thus, the use of "generally" in Rule 9 "does not give [a plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* 686–87.

## ARGUMENT

### I. Plaintiffs Fail to State a Claim Under 42 U.S.C. § 1983 Because the Heartland Defendants Were Not State Actors.

In Counts I and II, Plaintiffs allege that all Defendants, including the Heartland Defendants, both conspired and violated Plaintiffs' constitutional rights. However, Plaintiffs' Complaint makes no specific allegations against the Heartland Defendants; rather, it lumps all Defendants together

4

under broad, group violations of 42 U.S.C. § 1983. DE 1 at ¶ 507. Without alleging the prima facie elements of either a Section 1983 claim or a Section 1983 conspiracy claim, Plaintiffs' first two claims must be dismissed.

**A.    Plaintiffs Fail to State a Section 1983 Claim Because Plaintiffs Cannot Allege the Heartland Defendants Were State Actors.**

Plaintiffs fail to allege a violation of Constitutional rights under 42 U.S.C. § 1983. To state a claim under Section 1983, Plaintiffs must allege (1) a deprivation of a federal right and (2) that the deprivation was caused by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "A person acts under color of state law when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *DeLanis v. Metro. Gov. Nashville and Davidson Cnty*., 697 F.Supp.3d 748, 779 (M.D. Tenn. 2023). Individuals acting under the color of state law are usually referred to as "state actors," and as such, a private entity cannot typically be held liable under Section 1983 because the private entity is not a state actor. *Id.*

There can be no dispute that the Heartland Defendants are not state actors. Thus, to survive a motion to dismiss, Plaintiffs must allege facts to support one of the three limited circumstances where a private entity can qualify as a state actor: (a) when the private entity performs a traditional, exclusive public function; (b) when the government compels the private entity to take a particular action; or (c) when the government acts jointly with the private entity. *See id.* (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)). None of these exceptions applies to the Heartland Defendants.

Here, Plaintiffs fail to allege that the Heartland Defendants performed a traditional, exclusive public function, that the government compelled them to act, or that the government acted jointly with them. In fact, Plaintiffs' entire six-hundred-paragraph Complaint alleges "state action"

once, but only as it relates to Phil Williams and NewsChannel 5 Defendants' alleged involvement with public officials, Defendants Christina Templet and David Gregory. DE 1 at ¶¶ 156, 510. The alleged facts affirm that the Heartland Defendants are private individuals and a private media entity. Conducting and publishing podcast interviews does not constitute state action. Thus, Plaintiffs' Section 1983 claim fails as a matter of law and must be dismissed.

**B. Plaintiffs' Conspiracy to Violate Section 1983 Claim Must Fail Because There Cannot Be a Conspiracy Claim Without a Valid, Underlying Section 1983 Claim.**

A Section 1983 civil conspiracy claim cannot stand absent an underlying constitutional violation. *Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014). As the *DeLanis* court states, "to put it only slightly more explicitly, a Section 1983 civil conspiracy claim exists only when there is a separate and actionable constitutional violation that injures the plaintiff." *DeLanis*, 697 F. Supp. 3d at 781 (citing *Wiley v. Oberlin Police Dep't.*, 330 F. App'x 524, 530 (6th Cir. 2009)).

Here, Plaintiffs allege no actionable constitutional deprivation against the Heartland Defendants. Thus, because Plaintiffs fail to allege an underlying Section 1983 claim, there can be no conspiracy to violate Plaintiffs' constitutional rights under 42 U.S.C. § 1983, and Plaintiffs' claim must be dismissed.

**II. Plaintiffs Fail to Plead All of the Prima Facie Elements of a RICO Violation.**

The federal civil Racketeer Influenced and Corrupt Organizations (RICO) Act makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The RICO Act was designed "To prevent organized crime from 'obtaining a foothold in legitimate business.'" *In re ClassicStar Mare Leas Litig.*, 727 F.3d 473, 483 (6th Cir.

6

2013). To state a claim under the RICO Act, a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). In analyzing whether a RICO claim is plausibly pleaded, "each defendant is entitled to an individualized analysis of his, her, or its own RICO liability. *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015).

### A. Plaintiffs Fail to Plead the First Element of a RICO Claim Because Plaintiffs Do Not Allege That the Heartland Defendants Participated in the "Operation or Management" of the Enterprise.

Plaintiffs fail to plead the conduct element of a RICO claim. The conduct element requires that a defendant participated in the "operation or management" of the enterprise. *See Crabhouse of Douglaston Inc. v. Newsday Inc*., 801 F. Supp. 2d 64, 74 (E.D.N.Y. 2011) (finding that operation or management cannot be found where the complaint does not explain how the defendant actually participated or conducted the affairs of the enterprise and quoting the Supreme Court's test in *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)). In determining whether the conduct element has been met, the Court must consider that "[RICO] cannot be interpreted to reach complete 'outsiders because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves*, 507 U.S. at 185.

In other words, "a defendant can be [liable under the RICO Act] only if it directed or played a role in directing the affairs of the enterprise." *Whaley v. Auto Club Ins. Ass'n.*, No. 95-1918, 1997 WL 720451, at *3 (6th Cir. Nov. 12, 1997). In *Whaley*, the Sixth Circuit affirmed the dismissal of a RICO claim on a motion to dismiss where there were no factual allegations that the defendants were responsible for the operation or management of the alleged RICO enterprise. *Id.* at *4; *Whaley v. Auto Club Ins. Ass'n*, 891 F. Supp. 1237 (E.D. Mich 1995) (finding that there was no

7

operation or management where the defendant had representatives on automobile insurance board).

Here, Plaintiffs make conclusory allegations that Abramowicz "exercised managerial control over the Enterprise" by selecting guests, determining the airing schedule, rebroadcasting the podcast, and sharing in ad-revenue and that "His active role surpasses that of a passive publisher into the realm of operation and/or management of the Enterprise." DE 1 at ¶ 404. Plaintiffs fail to allege how the Heartland Defendants conducted the alleged affairs of the enterprise. All of Plaintiffs' allegations are part and parcel of the Heartland Defendants' everyday work as a podcast company. They are not the affairs of a RICO enterprise, and as *Reves* states, RICO does not reach "outsiders" whose own affairs are not implicated in the enterprise's affairs. Plaintiffs plead nothing more to support these conclusory allegations, and such threadbare allegations do not meet the bare minimum for the Supreme Court's "operation or management" standard. For this reason, Plaintiffs' RICO claim must be dismissed.

**B.    Plaintiffs Fail to Plead the Second Element of a RICO Claim Because Plaintiffs Do Not Allege the Three Structural Features of an "Association-in-Fact" Enterprise.**

Next, Plaintiffs must also allege that a RICO enterprise existed at all. The existence of the enterprise is a distinct element from the pattern of racketeering activity. *United States v. Turkette*, 452 U.S. 576, 583 (1981). Aside from conclusory allegations, Plaintiffs do not plead facts establishing a RICO enterprise. Because Plaintiffs allege a variant of the "enterprise" requirement known as an "association-in-fact" enterprise, they must allege facts that demonstrate "(1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established

8

duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga v. Benistar 419 Pan Servs., Inc.*, 694 F.3d 783, 795 (6th Cir. 2012).

An "association-in-fact enterprise" must have a "structure" with three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Courts in the Sixth Circuit have found that failing to allege these three structural features means a claim must be dismissed. *See, e.g.*, *Chendes v. Xerox HR Sols., LLC*, No. 16-13980, 2018 U.S. Dist. LEXIS 116105, at *24–25 (E.D. Mich. June 25, 2018). Furthermore, an "association-in-fact" enterprise "require(s) a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000).

The first structural feature of an "association-in-fact" enterprise, purpose, takes on the ordinary usage definition of a venture, undertaking, or project. *Smith v. Smith*, No. 2:15-CV-241, 2016 WL 4703834, at *4 (E.D. Tenn. Sept. 8, 2016). The second structural feature, association, requires interpersonal relationships and common interest, but a hierarchical structure—*i.e.*, chain of command—is not necessary. *Id.* (citing *Boyle*, 556 U.S. at 948). Finally, the third structural feature, longevity, requires that the enterprise "'function as a continuing unit and remain in existence long enough to pursue a course of conduct,' however, a RICO enterprise may remain in existence by engaging in 'spurts of activity punctuated by periods of quiescence.'" *Id.*

In *Smith*, the Eastern District of Tennessee found no evidence demonstrating that the defendants operated with a common purpose or relationship as needed by the Supreme Court's "association-in-fact" precedent. In that case, the plaintiff claimed that the defendant was the leader or organizer of the enterprise and directed all the activities of the other defendants but did not

9

allege additional facts relating to the alleged leadership activities or decisions. *Id.* at *4. The *Smith* court found that the bare allegations did not demonstrate a common purpose or that the defendants "functioned as a continuing unit." *Id.* at *5. Finally, the *Smith* court found that the plaintiffs never alleged even "spurts of activity" when there were only two time periods of conduct discussed in the complaint. *Id.*

Here, like in *Smith*, the Complaint alleges none of the three structural elements of an "association-in-fact" enterprise. Plaintiffs claim that the Heartland Defendants joined an enterprise with Kelley, Drake, and others whose common purpose was "to raise money under false pretenses, promote the unlawful racketeering…and launder credibility." DE 1 at ¶ 399. These assertions are merely speculative, unsupported by factual allegations, and do not sufficiently plead the "purpose" or "association" features of an "association-in-fact" enterprise.

Furthermore, Plaintiffs have not alleged the enterprise's structural longevity. Plaintiffs claim that the enterprise began "no later than August 2024" and continues to the present. DE 1 at ¶ 399. However, simply stating that Kelly was interviewed on the Heartland Journal Podcast on August 5, 2024, Drake was interviewed on the Heartland Journal Podcast on August 19, 2024, and the Heartland Defendants broadcast the two episodes later that month is insufficient to allege the enterprise's longevity. *See* DE 1 at ¶¶ 400–11. In fact, these two podcast episodes were distinct from any enterprise that had "longevity sufficient to permit these associates to pursue the enterprise's purpose." Like in *Smith*, Plaintiffs are alleging only one time period where the enterprise allegedly operated. The supposed "enterprise" is nothing more than a one-time sequence of podcast interviews conducted weeks apart. Such isolated interactions do not meet the structural or temporal requirements for a RICO "association-in-fact" enterprise. As a result, Count III of the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6).

**C. Plaintiffs Fail to Plead the Third and Fourth Elements of a RICO Claim Because Plaintiffs Do Not Plead With Particularity the Predicate Offense of Wire Fraud and Do Not Satisfy the "Relationship Plus Continuity" Test.**

Plaintiffs have also not alleged facts to support the "pattern of racketeering activity" elements. "Racketeering activity" includes several statutorily enumerated predicate offenses under 18 U.S.C. § 1961(1), including wire fraud, which Plaintiffs have pleaded in their Complaint against the Heartland Defendants. *See* DE 1 at ¶ 408. A "pattern of racketeering activity" requires "at least two acts of racketeering activity" which occurred within ten years of each other. 18 U.S.C. § 1961(5). However, merely pleading at least two predicate acts is insufficient to prove the pattern. *Smith*, 2016 WL 4703834, at *5 (citing *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229 (1989)).

The plaintiff must also prove that the racketeering practices are related and they "'amount to or pose a threat of continued criminal activity.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239). This requirement is called the "relationship plus continuity" test. *Id.* (citing *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012)). The "relationship plus continuity" test is bifurcated into two prongs: relationship and continuity. To satisfy the relationship prong, the acts must have "'similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id*. The continuity prong may be established by showing either a "'close-ended' pattern or an 'open-ended' pattern." *Id*. A "close-ended" pattern is a "'series of related predicate acts extending over a substantial period of time.'" *Id*. (citing *Heinrich*, 668 F.3d at 409). An "open-ended" pattern is a set of predicate acts that pose a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed. *Heinrich,* 668 F.3d at 409–10.

The federal pleading standard under Fed. R. Civ. P. 9(b) requires that fraud must be pleaded with particularity. Here, Plaintiffs have not pleaded the predicate acts of racketeering activity with

11

particularity. Plaintiffs make conclusory allegations that the "use of interstate wires to further their donation scheme constitutes at least four predicate acts of wire fraud under 18 U.S.C. § 1343, forming a pattern of racketeering activity..." DE 1 at ¶ 408. Plaintiffs have failed to plead the time, place, and content of the alleged misrepresentation, the fraudulent scheme, the fraudulent intent, and the injury. For these reasons, Plaintiffs have not pleaded "at least two acts of racketeering activity" with particularity under Fed. R. Civ. P. 9(b).

Even if the Court finds that Plaintiffs have sufficiently pleaded wire fraud to the heightened standard under Fed. R. Civ. P. 9(b), Plaintiffs have also not satisfied either prong of the "relationship plus continuity" test. In *Heinrich*, the Sixth Circuit held that to prove the relationship prong, the predicate acts must be committed by the same participants, for similar purposes, with similar victims using similar methods of commission. *Heinrich*, 668 F.3d at 409–10. Here, the alleged predicate acts of trafficking, murder for hire, and kidnapping—to name only a few—are not acts allegedly committed by the Heartland Defendants. *See* DE 1 at ¶ 523(a)–(h). They were, instead, allegedly committed by Defendants Kelley and Drake. The only predicate act Plaintiffs allege against the Heartland Defendants is wire fraud. Under *Heinrich*, these predicate acts were not committed by the same participants, for similar purposes, with similar victims using similar methods of commission. Rather, they were isolated events without any interrelationship at all. As a result, Plaintiffs have not sufficiently alleged the relationship prong of a "pattern of racketeering activity" against the Heartland Defendants.

Next, Plaintiffs have not sufficiently pleaded the continuity prong, whether as an "open-ended" or "close-ended" pattern. *See* DE 1 at ¶ 408. A "close-ended" pattern requires a "substantial period of time"; thus, courts focus on this form of continuity with durational specificity. As a general rule, predicate acts that extend over merely a few weeks or months are insufficient to

satisfy the continuity requirement. *Smith*, 2016 WL 4703834, at *5 (citing *Heinrich*, 668 F.3d at 409. For example, a scheme of four predicate acts affecting one victim and spanning seventeen months was insufficient to meet the continuity requirement. *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994). Predicate acts affecting about four victims spanning less than two months did not meet the requirement for close-ended continuity in *Heinrich* either. In *Smith*, the court found that the plaintiffs had not sufficiently alleged "close-ended" continuity because the alleged predicate acts took place over only one month. *Smith*, 2016 WL 4703834, at *6.

Similarly, here, Plaintiffs make only one allegation, "multiple acts over a one-year period," relating to the close-ended pattern of racketeering activity. DE 1 at ¶ 408. Yet, Plaintiffs' Complaint alleges the Heartland Defendants only conducted two podcasts over two weeks. According to the Complaint, the predicate activity of wire fraud began in August 2024 and has continued into the present. DE 1 at ¶ 399. Thus, the alleged pattern has been ongoing for almost fourteen months— even though Kelly and Drake were on the podcast from August 5, 2024, to August 19, 2024, a period of only two weeks. Even assuming that the activity has occurred for almost fourteen months, the Sixth Circuit in *Vemco* held that acts against one victim occurring over seventeen months were insufficient to prove a "close-ended" pattern. Thus, Plaintiffs' conclusory allegations that the Heartland Defendants somehow engaged in a fourteen-month scheme fail to allege a "substantial period of time" required to plead a "close-ended" pattern of continuity.

An "open-ended" pattern requires the plaintiffs to plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed and is a fact-specific analysis. *Heinrich*, 668 F.3d at 410. The Sixth Circuit in *Heinrich* held that a complaint that alleges an inherently terminable scheme—a pattern of racketeering activity with a built-in ending point—has prevented the Sixth Circuit from finding open-ended continuity in the

13

past. *Id.* For example, in *Vemco*, there was no pattern where only a single scheme to defraud one plaintiff the cost of one paint system was pleaded. Likewise, in *Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992), there was no pattern when the acts alleged amounted only to a breach of contract with a single customer. Finally, in *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991), there was no pattern where the defendant's fraudulent scheme to sell nineteen lots of land was an "inherently short-term affair" that ended once the lots were sold.

Here, Plaintiffs' allegation of an "open-ended" pattern similarly leaves much to be desired. Plaintiffs make conclusory allegations that "the show continues weekly, donation links remain live" as their sole basis for the "open-ended" pattern. DE 1 at ¶ 408. In reality, while the show does continue weekly as a podcast, Kelley and Drake are no longer guests. Though those episodes may potentially be viewed and downloaded, there is no ongoing criminal scheme. Rather, the scheme, if there even was one, was terminable. Moreover, even if there was some criminal scheme, it lasted only from August 5 to August 19 and has not continued since. As a result, Plaintiffs have not sufficiently pleaded that there was an open-ended pattern that constituted a "threat of continuing criminality beyond the period during which the predicate acts were performed." Instead, two unrelated podcast episodes never amounted to an open-ended pattern of criminality.

Because Plaintiffs have not alleged either the predicate acts of racketeering activity or the relationship and continuity prongs required to plead the "pattern of racketeering activity" elements, Count III of the Complaint must be dismissed.

### D. Plaintiffs' Conspiracy to Violate the RICO Act Claim Must Fail Because There Cannot Be a Conspiracy Claim Without a Valid, Underlying RICO Act Claim.

Plaintiffs fail to allege a civil conspiracy to violate the RICO Act. "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive

14

RICO provision.'" *Heinrich*, 668 F.3d at 411. "'An agreement can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes.'" *Id.*

Proving a RICO conspiracy claim is like proving any other civil conspiracy claim. It requires both alleging the substantive RICO violation and plausibly stating the conspiracy element of an illicit agreement. Plaintiffs have not successfully alleged all the elements of a RICO violation; thus, their conspiracy claim must be dismissed.

Even if the Court finds that Plaintiffs have sufficiently pleaded all four elements of their substantive RICO claim, their claim must still be dismissed for failing to allege the existence of an illicit agreement. In *Smith*, the court found the plaintiffs had failed to plausibly allege the defendants had entered into any agreement to violate the RICO Act because the only allegations in the complaint were conclusory allegations or a bare recital of the agreement requirement. *Smith*, 2016 WL 4703834, at *6. The plaintiffs in *Smith* alleged that "'upon information and belief, Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity,'" and "'upon information and belief, Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management or operation of the Enterprise's affairs through a pattern of racketeering activity.'" *Id*. The *Smith* court was unconvinced by such conclusory statements and held that "Such allegations, without any alleged factual support in the complaint, are insufficient to plausibly state a conspiracy." *Id.*

While Plaintiffs do not use the "upon information and belief" language utilized in *Smith*, they do make conclusory claims that are bare recitals of the agreement requirement. For example,

Plaintiffs state that "Defendants…agreed to participate in the conduct of the…enterprise's affairs through a pattern of racketeering activity" and "They agreed to carry out the unlawful scheme with the specific intent to harm Plaintiffs' business and property interests" and, finally, "Each Defendant knew of an voluntarily joined in the conspiracy's objectives…[and] acted in concert with each other." DE 1 at ¶¶ 533–34. These conclusory allegations neither establish an illicit agreement nor have any alleged factual support in the Complaint and are thus insufficient to plausibly state a conspiracy to violate the RICO Act.

Thus, without an underlying, substantive RICO claim—or if the Court does find the Plaintiffs have sufficiently alleged an underlying, substantive claim, one without the existence of an illicit agreement required for conspiracy—Count IV of the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## III.    State Law Claims Should Not Proceed When All Federal Law Claims Are Dismissed.

Counts V–VIII of the Complaint should be dismissed. Plaintiffs' remaining claims for defamation, false light invasion of privacy, defamation by implication or innuendo, and civil conspiracy are all brought pursuant to state law. It is the practice in the Sixth Circuit to decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed. Here, Plaintiffs bring their federal claims pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and their state law claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1667.

The Court may decline to exercise residual jurisdiction over remaining state-law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Moreover, District Courts "should not ordinarily reach the plaintiff's state law claims" where it "has dismissed a plaintiff's federal-law claims." *Moon*, 465 F.3d at 728. Thus, when a federal court dismisses all pending federal claims before trial, "the balance of considerations usually will point

to dismissing the state law claims." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Furthermore, "Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues.'" *Moon*, 465 F.3d at 728 (quoting *Landefiled v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)).

Here, Plaintiffs' state law claims should be dismissed because all the federal law claims giving the court original jurisdiction, Counts I–IV, should be dismissed for failure to state a claim upon which relief can be granted. Sixth Circuit precedent is instructive, and the Court should decline to maintain supplemental jurisdiction over Plaintiffs' state law claims.

## IV. Plaintiffs' Defamation Claim Fails to Plead Actual Malice with Convincing Clarity.

To the extent the Court exercises its supplemental jurisdiction over Plaintiffs' state law claims, Plaintiffs' defamation claim should be dismissed because Plaintiffs fail to allege actual malice by clear and convincing evidence. Defamation actions are split into actions brought by private persons and actions brought by public officials or public figures. Tennessee has adopted the Restatement (Second) of Torts provisions spelling out the two standards. *See Press v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978). When there is a defamation action brought by a public official or public figure—as opposed to a private person—the court applies the actual malice standard. *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 296 (Tenn. Ct. App. 2007).

The actual malice standard requires that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964). The Tennessee Supreme Court follows the actual malice standard that the United States Supreme Court recognized in *Sullivan*. Where the actual malice standard applies, the "burden is upon plaintiff to show with 'convincing clarity' the facts which make up the 'actual

17

malice.'" *Lewis*, 238 S.W.3d at 283. Evidence is clear and convincing when "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013). The evidence "must produce a firm belief or conviction in the fact finder's mind about the truth of the facts to be established." *In re Markus*, 671 S.W.3d 437, 457 (Tenn. 2023).

The actual malice standard may only be invoked when two conditions are met: (1) the allegedly defamatory statements must involve public controversy or a matter of public or general concern, and (2) the person claiming to be defamed must be either a public official or public figure. *Lewis*, 238 S.W.3d at 296. Here, because Plaintiffs allege that the Heartland Defendants acted with "knowledge of falsity or deliberate disregard for the truth" and admit that "Plaintiffs are public officials and the matters involve issues of public concern," the actual malice standard applies to the defamation count. DE 1 at ¶¶ 414, 550.

Alleging "with knowledge that it was false or with reckless disregard of whether it was false or not" required by the actual malice standard is subject to some nuance. In *Lewis*, the Tennessee Court of Appeals held that failing to investigate information provided by others before publishing it, even when a reasonably prudent person would have done so, is not sufficient by itself to establish reckless disregard. *Lewis*, 238 S.W.3d at 301 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). However, publishing statements when the publisher entertains serious doubts about their truth can amount to reckless disregard. *Id*. This subjective standard requires a "high degree of awareness of…probable falsity," which may be satisfied when there exist obvious reasons to doubt the veracity of the person who supplied the information or the accuracy of the information itself. *Id.* (quoting *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 688). Thus, while the "'failure to investigate will not alone support a finding of actual malice, the

purposeful avoidance of the truth is in a different category.'" *Id*. Actual malice can also be established by showing that the statement was "so inherently improbable that only a reckless [individual] would have put [it] in circulation." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Here, Plaintiffs make two allegations against the Heartland Defendants in their attempt to plead actual malice. Both conclusory allegations fail because they do not allege actual malice with convincing clarity. Plaintiffs allege that Abramowicz had "done 'no investigation' into Taylor's alleged 'conspiracies', yet repeated them as fact." DE 1 at ¶ 412. As the *Lewis* court states, failing to investigate information provided by others before publishing it, even when a reasonably prudent person would have done so, is not sufficient by itself to establish reckless disregard. Furthermore, Plaintiffs' conclusory allegation that the Heartland Defendants made the accusations "with knowledge of falsity or deliberate disregard for the truth" does not plead actual malice with convincing clarity. *See* DE 1 at ¶ 414. Simply hosting and rebroadcasting interviews on a matter of public concern does not constitute actionable defamation, particularly when the host neither endorses nor adopts the guest's remarks.

Thus, Plaintiffs' Count V for defamation must be dismissed for failing to allege the Heartland Defendants' actual malice.

### V. Plaintiffs' False Light Claim Fails to Plead Actual Malice with Convincing Clarity.

Like the analysis in Count V, Count VI of the Complaint should be dismissed because Plaintiffs have not alleged actual malice with clear and convincing evidence. The Tennessee Supreme Court has adopted the definition of false light set forth in Section 652E of the Restatement (Second) of Torts. *Brown v. Mapco Exp., Inc*., 393 S.W.3d 696, 706 (Tenn. Ct. App. 2012) (citing *West v. Media Gen. Convergence, Inc*., 53 S.W.3d 640 (Tenn. 2011)). Thus, to prevail on a false light claim, the plaintiff must prove three elements: "(1) a party gave publicity to a matter in a way

19

that placed him in a false light; (2) 'the false light in which [he] was placed would be highly offensive to a reasonable person[;]' and (3) the party 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which he would be placed.'" *Charles v. McQueen*, 693 S.W.3d 262, 280 (Tenn. 2024) (quoting *West*, 53 S.W.3d at 643–44). In Tennessee, the actual malice standard also applies to "false light claims when the plaintiff is a public official or public figure, or when the claim is asserted by a private individual about a matter of public concern." *Lewis*, 238 S.W.3d at 303.

For the same reasons as in the defamation analysis above—because the actual malice standard also applies to false light claims and Plaintiffs have admitted that they are public officials—Plaintiffs' false light claim fails to prove actual malice by clear and convincing evidence. The Tennessee Supreme Court in *Charles v. McQueen* emphasized that "Proving actual malice requires more than showing that a reasonable person might have done things differently. [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." 693 S.W.3d at 283. Plaintiffs' false light claim makes conclusory allegations that merely restate the actual malice standard. DE 1 at ¶ 550. Such bare allegations are not made with clear and convincing evidence and fail to sufficiently plead a cause of action for false light. Thus, Count VI of Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## VI. Plaintiffs' Defamation by Implication or Innuendo Claim Fails Because the Statements are Not Defamatory and Plaintiff Has Not Shown by Clear and Convincing Evidence that the Heartland Defendants Intended or Knew of the Implications.

Count VII of Plaintiffs' Complaint should be dismissed for failure to plead defamatory statements. Defamation by implication or innuendo occurs where "a statement may be capable of defamatory meaning even if the words do not appear defamatory on their face, but instead imply

or suggest a defamatory meaning. *Loftis v. Rayburn*, No. M2017-01502-COA-R3-CV, 2018 WL 1895842, at *5 (Tenn. Ct. App. Apr. 20, 2018). In other words, even if a defendant's statements are true, the defendant may be liable if the statements "imply facts that are not true." *Id*. Thus, "'The rationale behind the rule is that, when truthful statements carry a defamatory innuendo, the factual implication should also be true to justify the implication.'" *Id*.

Whether a communication is capable of conveying a defamatory meaning is a question of law a trial court may determine when "the statement is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense." *Grant v. Com. Appeal*, No. W2015-00208-COA-R3-CV, 2015 WL 5772524, at *10 (Tenn. Ct. App. Sept. 18, 2015). As a result, the statement "should be read as a person of ordinary intelligence would understand [it] in light of the surrounding circumstances." *Id*. To this end, courts are not bound to the plaintiff's interpretation of the defamatory materials, and if the words do not reasonably have the meaning the plaintiff ascribes to them, the court must disregard the plaintiff's interpretation. *Id*.

To prevail on a defamation by implication or innuendo claim, the plaintiff must establish in the complaint that the defendant published statements and that the meaning conveyed by the statements was defamatory. *Id*. Furthermore, the Sixth Circuit has added to the defamation by implication or innuendo analysis in *Compuware Corp. v. Moody's Investors Servs., Inc*., 499 F.3d 520, 528 (6th Cir. 2007) by stating that "[A] plaintiff can bring a claim for defamation when discrete facts…are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* (quoting *Green v. CBS Inc*., 286 F.3d 281, 284 (5th Cir. 2002)). In such situations, the plaintiff must show with clear and convincing evidence that the defendant intended or knew of the implications that the plaintiff is attempting to draw from the allegedly defamatory material. *Id.*; s*ee also Milkovich v.*

21

*Lorain J. Co.*, 497 U.S. 1, 20 (1990) (noting that defamation arises where a statement "reasonably implies false and defamatory facts" and where the plaintiff "show[s] that such statements were made with knowledge of their false implications or with reckless disregard of their truth"). Because the plaintiff in *Compuware* was a public figure, the actual malice standard applied to the defamation by implication or innuendo cause of action. Such is the standard in the instant case.

Notwithstanding the legal standard, Plaintiffs' Complaint fails as a matter of law because Plaintiffs have made no allegations against the Heartland Defendants directly. Plaintiffs' Complaint adopts the Sixth Circuit's test in *Compuware* by alleging that "Defendants juxtaposed those facts and omitted material context..." DE 1 at ¶ 555. However, Plaintiffs' conclusory allegations where the facts were "juxtaposed" are alleged only against Phil Williams and the NewsChannel 5 Defendants, not the Heartland Defendants. *See* DE 1 at ¶¶ 136, 182 & 488.

Even assuming that Plaintiffs were alleging defamation by implication or innuendo against the Heartland Defendants, the alleged statements are not defamatory as a matter of law because "the statement[s] [are] not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense" and because Plaintiffs must show with clear and convincing evidence that the Heartland Defendants intended or knew of the implications that the plaintiff is attempting to draw from the allegedly defamatory material. In other words, the Plaintiffs must plead the actual malice standard. Instead, all defamation allegations against the Heartland Defendants, Paragraph 413(a)–(e), fail to allege that they intended or knew of the implications that Plaintiffs are attempting to draw from the allegedly defamatory material such that "a person of ordinary intelligence would understand [as defamatory] in light of the surrounding circumstances."

For these reasons, Count VII of Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

22

**VII.    Plaintiffs' Civil Conspiracy Claim Must Fail Because There Cannot Be a Conspiracy Claim Without a Valid, Underlying Tort.**

The elements of a cause of action for civil conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). As regards the common design element, "Each conspirator must have the intent to accomplish this purpose, and each must know of the other's intent." *Danny L. Davis Contractors, Inc. v. Hobbs*, 157 S.W.3d 414, 419 (Tenn. Ct. App. 2004).

Most importantly, a claim for civil conspiracy "requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). Thus, conspiracy standing alone is not actionable where the underlying tort is not actionable. *Id.* at 179–80. Here, there cannot be any conspiracy where the underlying claim has not been pleaded sufficiently. *See Pagliara v. Moses*, 605 S.W.3d 619, 628 (Tenn. Ct. App. 2020). Because Plaintiffs have failed to plead defamation, false light, and defamation by implication or innuendo, Plaintiffs' conspiracy claim likewise fails.

Even if the Court finds that Plaintiffs have sufficiently alleged an actionable tort claim, the Complaint makes no allegations against the Heartland Defendants' role in any form of conspiracy. The Complaint makes conclusory allegations against all Defendants that they "formed a common design or agreement among themselves…to commit lawful acts by unlawful means, including but not limited to, defamation, false light, and disparagement of Plaintiffs" and "engaged in multiple overt acts in furtherance of their unlawful conspiracy, including coordinating a smear campaign, releasing secret recording, and publishing and posting false accusations." *See* DE 1 at ¶¶ 560–61. However, nowhere in the Complaint do Plaintiffs allege that the Heartland Defendants were in any

agreement with other Defendants to commit the underlying acts, nor do Plaintiffs allege that each Defendant acted with intent and each knew of the other's intent. *See* DE 1 at ¶¶ 560–61. In fact, the smear campaign and release of secret recordings relate only to the NewsChannel 5 Defendants and not the Heartland Defendants. *See* DE 1 at ¶¶ 117, 159. Thus, Count VIII of Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiffs' nearly six-hundred-paragraph Complaint is long on speculation but devoid of substance. The allegations against the Heartland Defendants do not meet even the bare minimum pleading standards for the eight counts Plaintiffs allege. The Heartland Defendants' only conduct was hosting two podcast interviews over two weeks.

For the foregoing reasons, Defendants respectfully request that the Court (1) Grant this Motion to Dismiss in its entirety; (2) Dismiss all claims against Heartland Journal, LLC and Steve Abramowicz with prejudice; and (3) Award such further relief as the Court deems just and proper.

Respectfully submitted,

**ADAMS AND REESE LLP**

*/s/ Rocklan W. King*
Rocklan W. King III (BPR # 030643)
1600 West End Ave, Suite 1400
Nashville, Tennessee 37203
(615) 259-1450 / (615) 259-1470 F
*rocky.king@arlaw.com*

*Counsel for Defendants, Steve Abramowicz and Heartland Journal, LLC*

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2025, the foregoing instrument has been

forwarded to all counsel of record via the Court's CM/ECF system:

Bryant B. Kroll
The Law Office of Bryant Kroll
P.O. Box 219
Pegram, TN 37143
(615) 257-5667
*bryant@bryantkroll.com*

*Counsel for Plaintiffs and Consolidated
Plaintiffs*

Kim Kelley
10700 S. IH 35
Dilley, TX 78017
512-897-3442
*pro se Defendant*

Ronald G. Harris
Womble Bond Dickinson (US) LLP
1222 Demonbreun St, Ste 1201
Nashville, TN 37203
629-312-1824
*ron.harris@wbd-us.com*

*Co-Counsel for Phil Williams, Levi Ismail,
Scripps Media, Inc.*

William J. Harbison, II
Sherrard Roe Voigt & Harbison, PLC
1600 West End Avenue, Suite 1750
Nashville, TN 37203
615-742-4200
*jharbison@srvhlaw.com*

*Co-Counsel for Phil Williams, Levi Ismail,
Scripps Media, Inc.*

Andrew W. Coffman
Phelps Dunbar LLP (MS Office)
105 East Main Street, Suite 201
Tupelo, MS 38804
662-690-8122
*andrew.coffman@phelps.com*

*Counsel for News-Press & Gazette Company*

/s/ Rocklan W. King
Rocklan W. King III