# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: CITY OF MILLERSVILLE | ) | |
| LITIGATION | ) | |
| | ) | **MASTER FILE NO. 3:25-cv-00052** |
| **This Document Relates To:** | ) | |
| **Case No. 3:25-cv-00576** | ) | |

---

## DEFENDANT DAVID GREGORY'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

---

Defendant David Gregory ("Gregory") submits this memorandum of law in support of his Motion to Dismiss Plaintiff Shawn Taylor ("Taylor") and Plaintiff Bryan Morris' ("Morris") complaint (Case No. 3:25-cv-00576, at ECF No. 1) (the "Complaint") in its entirety, with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs' Complaint alleges eight federal and state law "claims" against Gregory (and his 37 co-defendants): (1) First Amendment retaliation under 42 U.S.C. § 1983 ("Section 1983"); (2) civil conspiracy under Section 1983; (3) violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"); (4) RICO conspiracy (18 U.S.C. § 1962(d)); (5) defamation; (6) false light; (7) defamation by implication; and (8) civil conspiracy under Tennessee law.

Dismissal is proper because Defendant Gregory is immune from suit as an elected Commissioner and because Plaintiffs have failed to sufficiently plead their claims with plausible facts.

## PLAINTIFFS' ALLEGATIONS [1]

---

[1] Defendant Gregory does not concede the veracity of the allegations in the Complaint, which are presented here consistent with the standard for a Rule 12(b)(6) motion.

Plaintiffs' Complaint spans nearly 200 pages and includes over 550 paragraphs of allegations against Defendant Gregory and his 37 other defendants, the majority of whom are not identified by name.

Plaintiffs Taylor and Morris are the former Assistant Chief of Police and former Police Chief of Millersville, Tennessee, respectively. DE 1 at ¶ 1. Defendant Gregory served as a Commissioner for the City of Millersville while Plaintiffs worked for the Millersville Police Department and remains in this position. *Id*. at ¶ 13. Plaintiffs purport to sue Gregory in his individual capacity (*see id*.) despite his alleged unlawful actions taking place in the course of his governmental duties or while acting under "color of state law." (*see id*., at ¶¶ 155, 510).

Plaintiffs' eight purported "claims" in this lawsuit are unsupported and, simply put, unbelievable. The overall theme of Plaintiffs' Complaint is that the Millersville Police Department worked with vigilante groups, that the vigilante groups interfered with police operations, that these groups engaged in mass murder of foreign nationals, and that the groups' actions were for personal financial gain in violation of a variety of state and federal laws. In sum, Plaintiffs allege the purpose of the conspiracy is that it,

> [O]perates under a common purpose of raising illicit funds and public attention for Defendants' so-called 'child rescue' activities which included the alleged buying, kidnapping, or stealing of children from traffickers by force, as well as harboring them at a 'Survivor Center' surrounded by armed guards and concealing them from society until they reached adulthood, and plans to coerce them into labor at the 'Survivor Center.' Defendants also use this enterprise to solicit and launder donations through their 501(c)(3) organizations and Defendant Drake's political campaign, diverting money to themselves and evading regulatory oversight and proper taxation.

*Id*. at ¶ 521.

Plaintiffs' allegations of an overarching conspiracy are not limited to the aforementioned vigilante groups. Plaintiffs further allege that various media defendants, as well as Defendant

Gregory, participated in the conspiracy. However, none of Plaintiffs' factual allegations against Defendant Gregory support the slightest inference that he is part in any alleged conspiracy or otherwise engaged in unlawful racketeering activity. As set forth below, Plaintiffs merely allege that Gregory opposed Plaintiff Taylor's criticism of municipal officials or other private or public statements related to public corruption, campaign-finance abuses, and government misconduct; attempted to influence Plaintiff Morris to terminate Plaintiff Taylor in connection with his protected speech; defamed Plaintiff Taylor and Plaintiff Morris after Morris refused to terminate Taylor; and otherwise took actions intended to chill Plaintiff Taylor's protected speech. Specifically, Plaintiffs allege:

- Defendant Gregory (and Defendant Cristina Templet) served as Commissioners for the City of Millersville during the time period Plaintiffs worked for the Millersville Police Department. *Id*. at ¶¶ 12-13.

- Plaintiff Taylor, in his capacity as a private citizen, engaged in constitutionally protected speech, including private and public statements concerning political matters, government corruption, and public accountability. *Id*. at ¶ 492.

- Defendants Gregory and Templet strongly opposed Plaintiff Taylor's viewpoints and political associations, and sought to terminate or discredit him based on their disagreement with his protected political speech. *Id*. at ¶ 493.

- Defendants Gregory and Templet began a "campaign of retaliation" against both Plaintiffs Taylor and Morris when Plaintiff Morris refused to discipline or terminate Plaintiff Taylor for his protected political speech. *Id*. at ¶ 494.

- The "campaign of retaliation" Defendants Gregory and Templet pursued against Plaintiffs was coordinated with media defendants and included a "public smear campaign" through "repeated public comments falsely implying that [Plaintiff] Taylor was mentally unfit, affiliated with racist hate groups, and a threat to public safety, all of which were knowingly false and calculated to destroy his credibility and chill his speech." The "campaign of retaliation" was also intended to pressure Plaintiff Morris to terminate Plaintiff Taylor or "else suffer consequences himself." *Id*. at ¶¶ 494-96.

- When Plaintiff Morris refused their demands that he terminate Plaintiff Taylor, Defendants Gregory and Templet "turned their retaliatory efforts toward [Plaintiff] Morris, publicly criticizing his leadership, questioning his integrity, and falsely

implying that he was complicit in [Plaintiff] Taylor's purported misconduct." *Id*. at ¶ 500.

- Plaintiffs Taylor and Morris endured a hostile and retaliatory work environment in connection with the actions of Defendants Gregory and Templet, which were undertaken in concert with various media defendants and other defendants. The alleged unlawful actions included, among other things, "reputational harm, public humiliation, false associations with extremist ideologies, and workplace harassment, including harassment at nearly every meeting and work session at Millersville City Hall . . ." *Id*. at ¶¶ 501-03.

While Plaintiffs generally allege in a conclusory fashion that Defendant Gregory violated their constitutional rights, defamed them, and sought their termination, Plaintiffs fail to allege that Gregory committed any crimes that are recognized as unlawful racketeering activity under RICO.[2]

## ARGUMENT

### I. Plaintiffs' Section 1983 Claims Must Be Dismissed For Failure to State A Claim.

To state a claim under 42 USC § 1983 ("Section 1983"), Plaintiffs must plausibly plead that Defendant Gregory, while acting under color of law, deprived Plaintiffs of their rights under the United States Constitution or federal law. *See Gomez v Toledo,* 446 U.S. 635, 639 (1980). They have failed to do so and, accordingly, their Section 1983 claims must be dismissed.

#### A. Defendant Gregory Is Protected By Absolute Immunity.

Local legislators are absolutely immune from suit under Section 1983 for their legislative activities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *see also Smith v. Jefferson County Board of School Commissioners*, 641 F.3d 197, 218 (6th Cir. 20011).

According to the Complaint, during a May 2024 City Commission meeting, Defendant Gregory raised questions about, and demanded a hearing to determine, Plaintiff Taylor's fitness to

---

[2] Plaintiffs' claims against Defendant Gregory and Templet are nearly identical. Defendant Gregory pursues dismissal of the claims asserted against him through this Motion. Defendant Templet is pursuing dismissal of Plaintiffs' claims under Rules 12(b)(2) and (5) based on Plaintiffs' failure to serve a summons and complaint upon her in a timely manner. However, all arguments asserted in this Motion are equally applicable to the claims asserted against Defendant Templet and would warrant dismissal.

continue serving as Assistant Chief of Police. (Compl. ¶ 150.) Plaintiffs also allege that, during Commission meetings in June 2024, Defendant Gregory criticized Plaintiff Taylor and called for his resignation. (Compl. ¶¶ 289, 345.)

Plaintiffs concede that Defendant Gregory did not have authority to terminate Plaintiff Taylor. (Compl. ¶ 151.) Accordingly, Defendant Gregory was not—and could not have been—acting in an administrative capacity. Rather, he was speaking about matters of public concern to the City of Millersville, specifically the fitness of the second most powerful law enforcement official in the City. Addressing matters of public concern—particularly during a legislative session—is a core legislative function.[3] For these reasons, Defendant Gregory is absolutely immune from individual liability under Section 1983.

## B.     Defendant Gregory Is Protected by Qualified Immunity.

Qualified immunity protects government officials from liability based on the performance of their official duties, "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Key v. Grayson*, 179 F.3d 996, 999 (6th Cir. 1999), citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The question turns on the 'objective legal reasonableness' of the defendant's action, in light of the legal rules that were clearly established at the time the action was taken." *Pate v. Wallace,* 188 F.3d 508 (6th Cir. 1999), unreported, citing *Harlow, supra*, at 818-819; *Jackson v. Leighton*, 168 F.3d 903 (6th Cir. 1999). Indeed, "all but the plainly incompetent or those who knowingly violate the law" are entitled to qualified immunity.  *Malley v. Briggs*, 475 U.S. 335, 341 (1980).

---

[3] Defendant Gregory's motives for speaking about Plaintiff Taylor's fitness to serve as Assistant Chief of Police are legally irrelevant for purposes of determining whether he is protected by absolute immunity. The issue is whether nature of Defendant Gregory's actions—speaking on matters of public concern during a legislative meeting—were legislative. *See Bogan*, 523 U.S. at 54 (observing that, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it," and that "it simply is not consonant with our scheme of government for a court to inquire into the motives of legislators") (internal quotation marks omitted).

Moreover, it is insufficient for a plaintiff to point to a generic rule or to a violation of abstract "rights" such as "due process" or "free speech". *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (abrogated on other grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002)). Permitting a plaintiff to plead abstract rights would "convert the rule of qualified immunity … into a rule of virtually unqualified liability … [and transform] immunity into a rule of pleading." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Instead, a plaintiff must direct the court to binding "precedent from the Supreme Court, the Sixth Circuit or itself," and then, if none, to the decisions of other non-binding courts if "'such decisions both point unmistakably to the unconstitutionality of the conduct and [are] clearly foreshadowed by applicable direct authority [so] as to leave no doubt in the mind of a reasonable officer that his conduct [is] unconstitutional." *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993); *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992).

Here, Plaintiff Taylor alleges that Defendant Gregory's "threatened adverse action," based on an "officer's political beliefs," violated Plaintiff Taylor's First Amendment rights. (Compl. ¶¶ 153-154.) At most, these allegations show disagreement over Plaintiff Taylor's fitness for duty, a political issue, not a First Amendment violation. Defendant Gregory is entitled to qualified immunity because there is no clearly established precedent holding that it violates the First Amendment to discuss, request information about, or even condemn statements by a public official, such as the Assistant Chief of Police. Reasonable legislators in Defendant Gregory's position could believe they were engaging in permissible oversight and public discourse, not retaliation.

### C.      Plaintiffs Failed to State a Claim of First Amendment Retaliation.

A plaintiff alleging First Amendment retaliation must plausibly plead: (1) that plaintiff engaged in constitutionally protected activity; (2) that they were subject to adverse action that would deter a person of ordinary firmness from continuing to engage in the constitutionally protected conduct; and (3) causation. *See Farmer v. Cleveland Public Power*, 295 F.3d 593 (6th Cir. 2002) (abrogated on other grounds by *White v. Columbus Metropolitan Housing Authority*, 429 F.3d 232 (6th Cir. 2005), *citing Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

Plaintiff Taylor's free speech retaliation claim fails as a matter of law because he has not alleged adverse action.[4] Plaintiff Taylor does not allege that Defendant Gregory was his employer. He does not allege that Defendant Gregory terminated his employment. In fact, Plaintiff Taylor concedes that Defendant Gregory did not have authority to terminate his employment or otherwise take any adverse job action against him. (Compl. ¶ 151.) According to the Complaint, Defendant Gregory questioned whether Plaintiff Taylor was fit to serve as Assistant Police Chief and called for his resignation. (Compl. ¶¶ 150, 289.) The Complaint further alleges that he did so during meetings of the Millersville City Commission. In other words, the alleged adverse action is that a legislator, without any control over Plaintiff Taylor's employment, questioned Taylor's fitness to serve in the second most powerful law enforcement position in the City during public meetings of the legislature. Those allegations are insufficient as a matter of law.

In *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999), a former city council member and firefighter brought suit under Section 1983 against the city, the police chief, the city manager, and a police officer, alleging First Amendment retaliation based on publication of a report detailing criminal investigations of the fire department. The court found that "deliberate

---

[4] Defendant Gregory does not concede causation, that Plaintiff Taylor's speech was constitutionally protected, or that Taylor was speaking as a private citizen.

attempt[s]" to discredit one of the plaintiffs was "perhaps inappropriate and unfortunate" but not the type of "adverse action" protected by the First Amendment. Elaborating further, the court stated that it did "not think it would deter a public official of ordinary firmness from exercising his or her right to speak." *Id.* at 523. As to the other plaintiff, the court held that "generalized statements about the effect on [his] character and reputation" cannot satisfy the "constitutional threshold required for [his] claim of First Amendment retaliation."

Assuming that Plaintiffs—the former Chief and Assistant Chief of Police—are "of ordinary firmness," they have not adequately alleged "adverse action" as required for a First Amendment retaliation claim. Neither Plaintiff has alleged more than generalized statements about "reputational" harm, and have merely claimed a "threatened adverse action" by two legislators without any authority over their employment. (Compl. ¶¶ 151-153)

The Complaint frames a political disagreement as a constitutional tort. That is exactly the type of claim the First Amendment does not permit because "allowing constitutional redress for every minor harassment may serve to trivialize the First Amendment." *Mattox* at 521 (6th Cir. 1999).

Additionally, Defendant Gregory's alleged conduct is, itself, protected speech. Commissioners commenting at a public meeting about matters of public concern—government integrity, employee fitness, public trust—are themselves engaging in speech protected by the First Amendment. The law does not grant Plaintiffs greater speech rights than other public officials.

Moreover, where one public official criticizes another, each is exercising their own speech rights, an inherently political dispute, not a constitutional one. A thin-skinned plaintiff cannot transform ordinary political disagreement into a federal lawsuit merely by alleging retaliation.

Accordingly, absent any showing of a cognizable constitutional injury or actual damages, Plaintiffs' Section 1983 claims must be dismissed.[5]

## II. Plaintiffs Have Failed to Plead Any Valid RICO Claim.

Plaintiffs' third and fourth claims are based on RICO and conspiracy in violation of RICO, respectively. Plaintiffs' claims are not supported by facts and should be dismissed.

"To prevent organized crime from 'obtaining a foothold in legitimate business,' Congress created a civil cause of action for RICO violations." *In re ClassicStar Mare Lease Litig*., 727 F.3d 473, 483 (6th Cir. 2013). The RICO Act "provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id*. (citing 18 U.S.C. § 1962(c)). The RICO Act "provides a civil cause of action to '[a]ny person injured in his business or property by reason of a violation of section 1962.'" *Grand Isle Games, LLC v. Entities, Partnerships, & Unincorporated Associations Listed on Schedule A,* No. 3:25-CV-00390, 2025 WL 2324079, at *2 (M.D. Tenn. Aug. 12, 2025) (quoting 18 U.S.C. § 1964(c)). "Thus, a RICO plaintiff must allege an injury to his business or property as a result of the RICO violation." *Id*.

To prevail on a RICO claim, "a plaintiff must prove the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Portnoy v. Nat'l Credit Sys*., *Inc*., 837 F. App'x 364, 372 (6th Cir. 2020). To plead a pattern of racketeering, the plaintiff "must allege that the defendants committed at least two predicate acts of racketeering activity within a

---

[5] A conspiracy to violate rights protected under Section 1983 is not actionable without an underlying constitutional violation. Therefore, if the Court finds that Plaintiffs have failed to state a claim for First Amendment retaliation, their claim for Conspiracy to Violate First Amendment Rights must be dismissed as well. *Hall v. Chapman*, 627 F. Supp. 3d 804, 817 (E.D. Mich. 2022)

ten-year period." *Brown v. Knoxville HMA Holdings, LLC*, 447 F. Supp. 3d 630, 645 (M.D. Tenn. 2020) (citing 18 U.S.C. § 1961(5)).

To state a RICO conspiracy claim, a plaintiff must "successfully allege all the elements of a RICO violation, as well as . . . the existence of an illicit agreement to violate the substantive RICO provision." *Grubbs v. Sheakley Grp., Inc*., 807 F.3d 785, 805-06 (6th Cir. 2015); *Dell'Aquila v. Nat'l Rifle Ass'n of Am*., No. 3:19-CV-00679, 2025 WL 920275, at *7 (M.D. Tenn. Mar. 26, 2025). Courts in this District have long applied that standard. *See e.g., Foster v. Amarnek,* No. 3:13-516, 2014 WL 1961245, at *5-7 (M.D. Tenn. May 14, 2014). In analyzing whether a RICO claim is plausibly plead, "each Defendant is entitled to an individualized analysis of his, her, or its own RICO liability." *Kerrigan v. ViSalus, Inc*., 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015).[6]

Plaintiffs' RICO claims against Gregory fail because Plaintiffs do not allege facts showing they suffered an injury cognizable under RICO, that Gregory engaged in any RICO conduct, that he engaged in a pattern of racketeering activity, that he formed or participated in a RICO enterprise, or that he otherwise entered any "illicit agreement to violate the substantive RICO provision."

### A. Plaintiffs fail to adequately plead the elements of their RICO claims.

First, Plaintiffs' Complaint fails to state a RICO claim because it does not plead Plaintiffs were injured in their business or property in the manner required to bring a RICO suit. *See* 18 U.S.C. § 1964(c).[7] Plaintiffs must show that the defendants' alleged wrongful conduct was "a substantial and foreseeable cause" of the injury and the relationship between the wrongful conduct and the injury is "logical and not speculative*." In re ClassicStar*, 727 F.3d at 487.

---

[6] *Marinac v. Todd,* No. 1:20-CV-1571, 2022 WL 3904049, at *14 (N.D. Ohio Aug. 30, 2022) ("When multiple defendants are involved [in a RICO claim], a plaintiff must 'plead the specific facts as to each defendant.'").

[7] *In re ClassicStar*, 727 F.3d at 484 ("In addition to establishing that a given group of defendants conducted the affairs of a qualifying enterprise through a pattern of racketeering activity, civil RICO plaintiffs must show that the RICO violation was the proximate cause of the injury to their business or property.").

Plaintiffs raise conclusory allegations that they suffered injury for purposes of RICO in the form of loss of employment (including lost wages), reputational harm and loss of "professional opportunities," and out-of-pocket expenses (e.g., legal fees). DE 1 ¶¶ 526-28. Plaintiffs' allegations are legally insufficient. As an initial matter, the alleged injuries relate to the claims of defamation and false light—not the criminal predicate acts Plaintiffs allege in support of their RICO claims. Plaintiffs' RICO claims should be dismissed for this reason alone.[8]

In addition, Plaintiffs admit that neither were terminated from their employment, whether as a result of the alleged predicate acts or otherwise. DE 1 at ¶ 521. Plaintiffs admit that Plaintiff Taylor "voluntarily retire[d]" in "good standing" and that Plaintiff Morris resigned from his position. *Id.* at ¶¶ 484, 488-91, 539(g). Plaintiffs also admit that Plaintiff Taylor's retirement was "totally unconnected to any finding or accusation of wrongdoing." *Id.* at ¶¶ 488. Thus, Plaintiffs cannot be said to have suffered a loss of employment or wages as a result of Defendant Gregory's alleged actions, nor may Plaintiffs establish a cognizable RICO injury based on their allegations.

Additionally, as the U.S. Supreme Court recently made clear: "§ 1964(c) does not allow recovery for all harms. Instead, by explicitly permitting recovery for harms to business and property, it implicitly excludes recovery for harm to one's person." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025). Courts have held that "[d]amage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)." *Parker Stewart v. Plains Com. Bank*, No. 4:25-CV-04007-RAL, 2025 WL 2712496, at *13 (D.S.D. Sept. 23, 2025) (reputational damage and loss of compensation did not constitute injuries under RICO); *see also Tuma,* 2025 WL 2098700, at *4 (severe emotional distress resulting

---

[8] *See Tuma v. Hawthorne Race Course, Inc.*, No. 24-CV-8307, 2025 WL 2098700, at *5 (N.D. Ill. July 25, 2025) (dismissing RICO claim where the alleged predicate acts "ha[d] nothing to do" with the alleged injury—the plaintiff's termination of employment).

in physical injuries and harm to the plaintiff's professional reputation, in addition to her loss of employment, constituted an "injury [that was] not compensable under RICO."); *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1013 (E.D. Va. 2021) (reputational harm resulting from alleged "smear campaign" against plaintiff and associated pecuniary losses (e.g., legal fees and costs) were not cognizable RICO injuries). Thus, as Plaintiffs are unable to show a cognizable RICO injury based on their admitted voluntary separations from employment or alleged reputational harm, Plaintiffs' RICO claims should be dismissed.

Second, to survive a motion to dismiss, there must be factual allegations that a defendant participated in the "operation or management" of the purported enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). That is, "a defendant can be [liable under the RICO ACT] only if it directed or played a role in directing the affairs of the enterprise." *Whaley v. Auto Club Ins. Ass'n*, 129 F.3d 1266, 1997 WL 720451, at *3 (6th Cir. Nov. 12, 1997). In *Whaley*, the Sixth Circuit affirmed the dismissal of a RICO claim on a motion to dismiss where there were no factual allegations that the defendants were responsible for the operation or management of the alleged RICO enterprise. *Id*. at *3-4.

Here, as in *Whaley*, Plaintiffs' allegations fail to establish Defendant Gregory's participation in the alleged conspiracy, let alone his role in managing or running the operations of the conspiracy. Instead, the Complaint does nothing more than make a conclusory allegation that all the defendants, including Defendant Gregory, were involved. This is insufficient to survive a motion to dismiss. That is especially true in the RICO context where courts would expect to find substantial factual allegations to support allegations of an international conspiracy involving government actors, media companies, non-profits, and individuals. *See Wyndham Vacations Resorts, Inc. v. The Consulting Grp., Inc.,* No. 2:12-CV-00096, 2013 WL 3834047, at *6-8 (M.D.

Tenn. July 23, 2013) (outlining the more than 180 individual communications between conspirators pleaded, the specific times and dates of alleged fraudulent activity, instances of sham property transfers and instances of the creation of false documents.). None of that is present here, warranting dismissal. Indeed, there are no "facts" alleging that Gregory participated in a conspiracy or managed the conspiracy, which is necessary to establish a facially valid RICO claim.

Third, Plaintiffs fail to plead that Gregory engaged in a pattern of racketeering activity. To do so, "[Plaintiffs] must allege that the defendants committed at least two predicate acts of racketeering activity within a ten-year period." *Brown*, 447 F. Supp. 3d at 645 (citing 18 U.S.C. § 1961(5)). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)." *Heinrich*, 668 F.3d at 404. That is, the specific crimes that are RICO predicate acts are explicitly listed in the RICO Act. Failure to plead facts supporting the required predicate acts requires dismissal of a RICO claim. *Brown v. Burch, Porter & Johnson PLLC L. Firm*, No. 15-2167, 2015 WL 5737802, at *4 (W.D. Tenn. Sept. 30, 2015).

The Complaint generally alleges seven purported predicate acts committed by "Defendants":

> (1) "Human Trafficking and Involuntary Servitude . . .;" (2) "Financial Crimes and Extortion . . . encompassing extortion, money laundering, and wire fraud aimed at financing and perpetuating the Defendants' illicit activities;" (3) "Sexual Exploitation of Children . . . involving the procurement and transportation of minors who have been trafficked for unlawful sexual purposes;" (4) "Economic Espionage and Theft of Trade Secrets . . .;" (5) "Interference with Law Enforcement Operations . . . involving the obstruction of legitimate law enforcement investigations and the manipulation of legal processes to facilitate criminal enterprises;" (6) "Murder-for-Hire and International Terrorism . . ." and (7) "Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises . . . The Defendants traveled across state lines and utilized interstate mail and commerce facilities with the intent to distribute the proceeds of unlawful activities, commit crimes of violence to further these activities, and facilitate the promotion and management of their criminal enterprises."[9] DE 1 at ¶ 25.

---

[9] Other paragraphs of the Complaint appear to allege that defamation, false light, and state law torts are "predicate acts" under the RICO Statute. *See* DE 1 at ¶ 523(h). Such allegations are directly contradicted by the Act itself. 18

However, the factual allegations regarding Defendant Gregory do not relate to those alleged crimes in any way. In fact, Plaintiffs fail to allege that Gregory committed any acts which are indictable under the federal statutes listed in 18 U.S.C. § 1961(1). Instead, all the allegations pled regarding Defendant Gregory, relate solely to his purported opposition to Plaintiff Taylor's protected speech, attempts to influence Plaintiff Morris to terminate Taylor; defamation of Plaintiff Taylor and Plaintiff Morris after Morris refused to terminate Taylor; and other retaliatory actions intended to chill Taylor's protected speech. Even if broadly construed, Plaintiffs' Complaint does not allege facts showing that Defendant Gregory committed multiple predicate acts in furtherance of a purported racketeering scheme. At most, Plaintiffs' Complaint alleges Defendant Gregory's participation in a simple conspiracy to violate Plaintiffs' constitutional rights, defame them, or seek their termination. Numerous courts have held that such allegations fail to state a claim for relief under RICO.[10] Indeed, it is essentially black letter law that the RICO claims should be dismissed.

In addition, Plaintiffs' conclusion that Defendant Gregory committed the seven predicate acts above discussed are insufficient to establish a plausible claim under RICO. According to the

---

U.S.C. § 1961(1)(B). The Sixth Circuit has explicitly held that "[o]nly those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offense for RICO violations." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993).

[10] *See, e.g., Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 156 (D.D.C. 2016) ("Section 1983 violations do not constitute racketeering activities and cannot form the basis of a RICO claim."), aff'd, 728 F. App'x 12 (D.C. Cir. 2018); *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019) ("[T]he law is clear that defamation is not a predicate act under RICO."), aff'd, 806 F. App'x 7 (D.C. Cir. 2020); *Kimberlin v. Nat'l Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015) (stating that "it is 'firmly established that defamation and many other similar allegations do not provide the requisite predicate act for RICO violations'" and dismissing RICO claim because it "reflect[ed] more of an attempt to spin an alleged scheme to harm [plaintiff's] reputation than it reflect[ed] a viable RICO claim"); *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1121 (W.D. Wash. 2004) (allegations of false light, defamation, invasion of privacy, intrusion, or outrage are not predicate acts under RICO), aff'd, 152 F. App'x 565 (9th Cir. 2005); *Freites v. Medina*, No. 25-CV-20465, 2025 WL 1425491, at *9 (S.D. Fla. May 16, 2025) (stating that "courts routinely reject a party's attempt to shoehorn defamation claims and other claims of reputational harm into a RICO framework."); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 295 (9th Cir. 1990) (affirming dismissal of RICO claim because "the act of terminating [plaintiff's] employment is not a predicate act as defined by § 1961(1)"); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 155–56 (6th Cir. 1990) (dismissing RICO claims where "plaintiff's injury resulted from defendants' decision to fire him in retaliation because he reported an allegedly fraudulent scheme to his superiors and to government officials.").

14

case law, the facts pled are woefully insufficient.[11] Notably, the paragraphs of the Complaint that

allege RICO violations are generally directed at all 38 defendants. Plaintiffs do not specifically

mention Defendant Gregory by name, nor do they allege any other facts to support the claim. *See*

DE 1 at ¶¶ 519-36. Further, Plaintiffs fail to plead facts to show Defendant Gregory actually

committed one of the predicate federal crimes. These considerations alone necessitate dismissal of

Plaintiffs' RICO claims.[12]

> Fourth, Plaintiffs fail to allege the formation of a RICO enterprise.
>
> A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Courts have interpreted that language to require pleading facts making plausible allegations "(1) that a group of persons formed an ongoing organization; (2) that they functioned as a continuing unit; and (3) that the organization was separate from the pattern of racketeering activity in which it engaged." *Gratton v. Cochran*, No. 3:19-CV-00267, 2019 WL 1787665, at *3 (M.D. Tenn. Apr. 24, 2019).

Where a complaint fails to allege facts supporting each of these elements, it is subject to dismissal.

*Id*. at *3 (citing *VanDenBroeck v. CommonPoint Mortg. Co*., 210 F.3d 696, 699 (6th Cir. 2000),

overruled in part, on other grounds, by *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639

(2008)). Failing to allege "three 'structural features: a purpose, relationships among those

associated with the enterprise, and longevity sufficient to permit these associations to pursue the

enterprise's purpose," means a claim must be dismissed. *Smith v. Smith*, No. 2:15-CV-241, 2016

---

[11] *See Howse v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:18-1148, 2019 WL 13397804, at *5 (M.D. Tenn. Mar. 4, 2019) ("Although Plaintiff sets out a laundry list of what he contends are unlawful acts - intimidation, witness coercion, witness intimidation, evidence tampering, malicious prosecution (obstruction of justice), theft, and fraud . . . these are conclusory allegations that are unsupported by specific factual allegations. Such conclusory allegations will not support a claim for relief."). *Brent v. Dep't of Veterans Affs. Debt Mgmt. Ctr.*, No. 219CV02446TLPDKV, 2020 WL 917288, at *2 (W.D. Tenn. Feb. 26, 2020) (dismissing RICO claim because the plaintiff's "conclusory statement that [Defendant] is guilty of violations of RICO and his vague allegations that [Defendant's] employees conspired against him are not sufficient to establish the required elements of a civil RICO claim.").

[12] Plaintiffs also raise general and conclusory allegations that Defendant Gregory committed criminal acts in violation of Tennessee law. For example, Plaintiffs allege that Defendant Gregory "unlawfully possessed" an "illegally-made Police Commission Card[]." DE 1 at ¶¶ 33, 274. These allegations are irrelevant to the RICO claims because such alleged acts are not recognized as "racketeering activity" under RICO. *See* 18 U.S.C. § 1961(1). Further, Plaintiffs fail to provide any explanation as to how these specific alleged acts furthered the alleged racketeering scheme or resulted in injury to Plaintiffs' business or property. *See Whaley*, 1997 WL 720451, at *3.

WL 4703834, at *4 (E.D. Tenn. Sept. 8, 2016) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Further, even a conspiracy to commit a fraud is not sufficient to plead a RICO enterprise, "'if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes.'" *Dixit v. Smith*, No. 2:21-CV-02602-JTF-ATC, 2023 WL 6150816, at *8 (W.D. Tenn. Aug. 11, 2023).

Here, there is not a single fact pled regarding Defendant Gregory agreeing to any criminal acts with his co-defendants or that Gregory formed a group to further a criminal conspiracy. The Complaint merely alleges that Gregory violated Plaintiffs' constitutional rights, defamed Plaintiffs, or sought Plaintiffs' termination. There are no facts to show Gregory was part of any organization involving his co-defendants, let alone a racketeering scheme. Accordingly, Plaintiffs' RICO claims must be dismissed.

### B. Plaintiffs fail to adequately plead RICO conspiracy claims.

Relatedly, Plaintiffs' separate claims for conspiracy to violate RICO must be dismissed because, as discussed above, Plaintiffs fail to sufficiently plead all four elements of a RICO violation. *See Grubbs*, 807 F.3d at 805-06. Even if Plaintiffs could establish all elements of a RICO violation, which they cannot, Plaintiffs' RICO conspiracy claims should be dismissed because Plaintiffs do not sufficiently plead that Defendant Gregory entered into an illicit agreement to violate RICO. Here, Plaintiffs merely allege in conclusory fashion as follows:

> "Defendants . . . agreed to participate in the conduct of the . . . enterprise's affairs through a pattern of racketeering activity", that they "agreed to carry out the unlawful scheme with the specific intent to harm Plaintiffs' business and property interests", and that "[e]ach Defendant knew of and voluntarily joined in the conspiracy's objectives . . . [and] acted in concert with each other." DE 1 at ¶¶ 533–34.

These are conclusory allegations and not allegations of facts; hence, they are insufficient to establish a conspiracy to violate RICO. *See Smith*, 2016 WL 4703834, at *4 (explaining that

dismissal is appropriate where conclusions rather than facts establish an agreement to violate RICO). Accordingly, Plaintiffs' RICO conspiracy claims should similarly be dismissed.

### III. Defendant Gregory is Immune from Plaintiffs' Remaining Claims Under Tennessee Law.

Plaintiffs' remaining claims for defamation, false light, defamation by implication or innuendo, and civil conspiracy are all brought pursuant to Tennessee law. DE 1 at ¶¶ 537-62. Such claims are subject to dismissal pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"), T.C.A. § 29-20-101, et seq.

The GTLA provides that "members of boards [and] commissions . . . must be permitted to operate without concern for the possibility of litigation arising from the faithful discharge of their duties." T.C.A. § 29-20-201(b). Thus, "[a]ll members of boards, commissions . . . and other governing bodies of any governmental entity . . . shall be immune from suit arising from the conduct of the affairs of such board, commission . . . or other governing body." *Id*. This "absolute immunity" applies unless the conduct "amounts to willful, wanton, or gross negligence." *Moses v. Roland*, No. W201900902COAR3CV, 2021 WL 1140273, at *6 (Tenn. Ct. App. Mar. 25, 2021) (citing T.C.A. § 29-20-201(b)). Absolute immunity under the GTLA bars claims of defamation against county and city commissioners which are based on statements made during commissioner meetings. *See Moses*, 2021 WL 1140273, at *6-10 (commissioner was immune from suit for alleged defamatory remarks made during regularly scheduled county board of commissioners meeting); *Miller v. Wyatt*, 457 S.W.3d 405, 406 (Tenn. Ct. App. 2014) (councilman was immune from suit with respect to alleged defamatory statement made during city council meeting regarding city manager's discharge). Notably, Tennessee courts have also applied this absolute immunity to bar defamation claims based on statements made outside of a regularly scheduled commissioner

meeting where such remarks are "of a legislative character." *Issa v. Benson*, 420 S.W.3d 23, 28 (Tenn. Ct. App. 2013). Absolute immunity also applies even where the defendant is sued in their individual capacity. *Witty v. Cantrell*, No. E2010-02303-COA-R3CV, 2011 WL 2570754, at *7 (Tenn. Ct. App. June 29, 2011).

The specific defamation allegations directed at Gregory arise from statements he allegedly made during city commission meetings.[13] However, these claims are barred by legislative privilege.[14]

In addition, the alleged statements are remarks "of a legislative character." *Issa*, 420 S.W.3d at 28. Indeed, Plaintiffs allege Defendant Gregory "acted under color of state law" in making the alleged statements. DE 1 at ¶¶ 155, 510. Plaintiffs also admit Defendant Gregory is a "public official" and that the alleged defamatory statements involve matters of "public concern." *Id*. at ¶¶ 550-54. The alleged statements represent nothing more than Defendant Gregory acting in his capacity as an elected commissioner to publicly inquire into potential impropriety or unprofessionalism of Assistant Chief of Police Plaintiff Taylor—a city employee hired by Plaintiff Morris (the Chief of Police and interim City Manager who also attended the meetings). *Id*. at ¶¶ 45-46. Defendant Gregory was obviously privileged as a commissioner to publicly inquire into Plaintiff Taylor's fitness for his position during city meetings based on his public statements and

---

[13] Plaintiffs allege that Gregory, during a city commissioner meeting, inquired into statements Plaintiff Taylor made on a podcast and his fitness for his position. *Id*. at ¶¶ 150-53. Plaintiffs further allege that, during a different city commissioner meeting, Defendant Gregory mischaracterized statements Plaintiff Taylor made on a podcast regarding a Tennessee school shooting and a criminal investigation of city commissioners, stated his belief that Plaintiff Taylor was a "disgrace to [the city's] police department" and was "dragging our city through the mud" based on his podcast statements, and also requested that Plaintiff Morris (the interim City Manager) "fire [Taylor]." *Id*. at ¶¶ 289-93. Plaintiffs further allege that, during a June 18, 2024 city commissioner meeting, Defendant Gregory made false statements that Plaintiff Taylor "[w]as 'fired' from Millersville in 2016 for mental instability[,]" "[w]as not a canine handler[,]" and "[h]ad 'delusions' and committed 'criminal acts' like secret recordings." *Id*. at ¶¶ 345-46.

[14] Where alleged defamatory statements occur during regularly scheduled open meetings, this is a factor that "weighs in favor of applying legislative privilege." *Miller*, 457 S.W.3d at 411.

actions. *Miller*, 457 S.W.3d at 412 ("We do observe generally that if a city council member becomes aware of allegations of impropriety by a city employee, it would fall within the legitimate business of the council to discuss and investigate the allegations."). Moreover, Defendant Gregory's intentions or motivations in making the alleged statements are irrelevant. *Miller*, 457 S.W.3d at 412.

Plaintiffs' allegations also fail to establish that Defendant Gregory's alleged inquiries into Plaintiff Taylor's fitness as a city employee amount to "willful, wanton, or gross negligence," such that immunity is removed under the GTLA. This standard requires Plaintiffs to establish "not just simple negligence, but also a reckless disregard for the rights of others." *Moses*, 2021 WL 1140273, at *8. This requires Plaintiffs to show that Defendant Gregory "in fact entertained serious doubts" about the truth of the alleged statements or otherwise had a "high degree of awareness of probable falsity." *Id.* at *9. Rather than pleading facts in support of this required element, Plaintiffs' Complaint merely raises sweeping and conclusory assertions. There are no facts pled to establish that Gregory "in fact entertained serious doubts" about the truth of the statements or had a "high degree of awareness of probable falsity." *Id.* at *9. Legislative immunity is not removed under these circumstances.

As Defendant Gregory is immune from suit from Plaintiffs' claims of defamation, defamation by implication or innuendo, and false light—as well as Plaintiffs' civil conspiracy claims premised solely upon such allegations—Plaintiffs' state law claims should be dismissed under the GTLA.[15]

---

[15] Plaintiffs further allege that Defendant Phil Williams published news articles on May 22 and June 3, 2024 which attributed the following "defamatory" quotes to Defendant Gregory: "We've got questions to ask the assistant chief Shawn Taylor, especially after what we saw on NewsChannel 5 last night . . ." and "They [the public] are afraid now of the police department . . . because of Shawn Taylor." DE 1 at ¶¶ 161, 164, 286. The former quote is a neutral statement that is not actionable as defamation. The latter quote is merely opinion, hyperbole, or rhetorical exaggeration, which is similarly not actionable as defamation. Moreover, Plaintiffs fail to allege any facts establishing

**IV. Plaintiffs' State Law Claims for Defamation, Defamation by Implication or Innuendo, and False Light Are Not Plausibly Pled and Should be Dismissed.**

Even if legislative immunity does not apply, Plaintiffs' claims of defamation remain subject to dismissal under Rule 12(b)(6). In cases where, as here, the alleged defamatory statement is made regarding a public official or a matter of public concern, DE 1 at ¶¶ 550-54, the plaintiff must plead and prove actual malice. *Charles v. McQueen*, 693 S.W.3d 262, 269 (Tenn. 2024).[16] Actual malice requires proof the statement at issue was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Thomas M. Cooley Law Sch. V. Kurson Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014).[17]

As discussed above, the alleged defamatory statements are not facts and are therefore not actionable as defamation. Moreover, Plaintiffs fail to plead actual malice with facts. Instead, Plaintiffs' Complaint merely restates, in conclusory fashion, the actual malice standard. *See* DE 1 at ¶¶ 152, 293, 541, 549-50, 557. Such bare assertions are insufficient to plead actual malice by clear and convincing evidence.[18] Thus, Plaintiffs' claims for defamation, defamation by implication or innuendo, and false light should be dismissed.[19]

---

that these alleged statements were made with actual malice. Accordingly, the alleged quotes by Defendant Gregory do not support Plaintiffs' claims.

[16] The actual malice standard also applies to claims of defamation by implication or innuendo and false light that are brought by a public official or figure or which involve matters of public concern. *Id.*; *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 528 (6th Cir. 2007).

[17] Like the standard to overcome immunity under the GTLA, this standard requires Plaintiffs show Defendant Gregory "entertained serious doubts as to the truth of [their publication]" or otherwise made the statement "with a high degree of awareness of probable falsity." *See id.* at 531. Further, actual malice must be proved by clear and convincing evidence—"the most demanding standard applied in civil cases"—not merely a preponderance of the evidence. *Id.* at 527, 531.

[18] *See Molthan v. Meredith Corp.*, No. 3:17-CV-00380, 2018 WL 691338, at *12 (M.D. Tenn. Feb. 2, 2018); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (mere recitation of the actual malice legal standard "is precisely the sort of allegations that *Twombly* and *Iqbal* rejected.").

[19] Moreover, Plaintiffs may not rely on conclusory allegations that Defendant Gregory should have reviewed Plaintiff Taylor's "personnel file from prior agencies" or podcasts prior to publicly inquiring into Plaintiff Taylor's mental state or public statements. *See* DE 1 at ¶¶ 152, 293. A plaintiff's personnel file from prior employment does not reveal any

## V. Plaintiffs' Civil Conspiracy Claims Are Not Plausibly Pled and Should be Dismissed.

The eighth count in Plaintiffs' Complaint accuses Defendant Gregory of "civil conspiracy." Plaintiffs' claims rely on sweeping and conclusory allegations that Defendant Gregory and the 37 other defendants engaged in a civil conspiracy to "commit unlawful acts, or to commit lawful acts by unlawful means, including but not limited to, defamation, false light, and disparagement of Plaintiffs." DE 1 at ¶¶ 560-561. As noted above, the Court should dismiss Plaintiffs' civil conspiracy claims pursuant to legislative immunity under the GTLA as the claims are premised solely upon Plaintiffs' claims for defamation and false light. Even if legislative immunity does not apply, dismissal remains proper under Rule 12(b)(6).

Under Tennessee law, "civil conspiracy is not itself a cause of action." *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-CV-00469, 2020 WL 5877131, at *8 (M.D. Tenn. Oct. 2, 2020); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999). Civil conspiracy is, instead, a means of extending, to a tortfeasor's co-conspirators, liability for the tortfeasor's underlying tort. *JRS Partners, GP*, 2020 WL 5877131, at *8. Consistent with its function, a civil conspiracy "'requires an underlying predicate tort allegedly committed pursuant to the conspiracy.'" *Mitchell v. Taylor*, No. 3:18-CV-01023, 2021 WL 11713923, at *5 (M.D. Tenn. Aug. 12, 2021). "Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." *Id*. Thus, where a plaintiff's complaint fails to allege an underlying tort, "the civil conspiracy claim has not been validly stated and should be dismissed for failure to state a claim." *JRS Partners, GP*, 2020 WL 5877131, at *8.

---

information regarding their current mental state. Additionally, even if Defendant Gregory did not review the personnel file or watch the podcast before making his alleged statements, "reckless conduct is not measured by whether a reasonably prudent [person] would have . . . investigated before publishing." *Moses*, 2021 WL 1140273, at *9.

As discussed above, Plaintiffs fail to sufficiently plead any claim against Defendant Gregory. Even if Plaintiffs could do so, which they cannot, Plaintiffs' general and conclusory allegations that all 38 defendants engaged in a conspiracy to defame them, disparage them, or portray them in a false light, without any factual support, are insufficient to state a claim for civil conspiracy. Accordingly, the Court should dismiss Plaintiffs' civil conspiracy claims.[20]

## CONCLUSION

For the reasons stated herein, the Court should grant Defendant Gregory's motion to dismiss in its entirety pursuant to Rules 12(b)(6) and award him other such relief as the Court deems appropriate.

Dated: November 14, 2025

Respectfully submitted,

**FORDHARRISON LLP**

/s/ Frank L. Day
Frank L. Day, Esq.
1715 Aaron Brenner Drive
Suite 200
Memphis, Tennessee 38120
(901) 291-1529
fday@fordharrison.com

***ATTORNEY FOR DEFENDANTS
CRISTINA TEMPLET AND
DAVID GREGORY***

---

[20] *See Mitchell*, 2021 WL 11713923, at *6 (M.D. Tenn. Aug. 12, 2021) (dismissing civil conspiracy claim after finding the alleged underlying tort (fraudulent conversion of real property) was subject to dismissal under Rule 12(b)(6)); *see also Marshall v. ITT Tech. Inst.*, No. 3:11-CV-552, 2012 WL 1205581, at *4 (E.D. Tenn. Apr. 11, 2012) (dismissing civil conspiracy claim because it was supported only by the plaintiff's "conclusory assertion that [all three] defendants were 'acting jointly and as co-conspirators' engaged in a civil conspiracy" to commit several deceptive acts and otherwise failed to include factual allegations specific to any of the three defendants regarding their participation in or acts in furtherance of the civil conspiracy).

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of November, 2025, the foregoing instrument has been

forwarded to all counsel of record via the Court's CM/ECF system:

Bryant B. Kroll
The Law Office of Bryant Kroll
P.O. Box 219
Pegram, TN 37143
(615) 257-5667
bryant@bryantkroll.com
*Counsel for Plaintiffs and*
*Consolidated Plaintiffs*

Kim Kelley
10700 S. IH 35
Dilley, TX 78017
(512) 897-3442
*pro se Defendant*

Ronald G. Harris
Womble Bond Dickinson (US) LLP
1222 Demonbreun St., Ste. 1201
Nashville, TN 37203
(629) 312-1824
ron.harris@wbd-us.com
*Co-Counsel for Phil Williams, Levi Ismail,*
*Scripps Media, Inc.*

William J. Harbison, II
Sherrard Roe Voigt & Harbison, PLC
1600 West End Avenue, Suite 1750
Nashville, TN 37203
(615) 742-4200
jharbison@srvhlaw.com
*Co-Counsel for Phil Williams, Levi Ismail,*
*Scripps Media, Inc.*

Andrew W. Coffman
Phelps Dunbar LLP (MS Office)
105 East Main Street, Suite 201
Tupelo, MS 38804
(662) 690-8122
andrew.coffman@phelps.com
*Counsel for News-Press & Gazette Company*

Rocklan W. King III
Adams and Reese LLP
1600 West End Ave, Suite 1400
Nashville, TN 37203
(615) 259-1450
rocky.king@arlaw.com
*Counsel for Defendants Steve Abramowicz and*
*Heartland Journal, LLC*

/s/ Frank L. Day
Frank L. Day, Esq.