**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **IN RE: CITY OF MILLERSVILLE LITIGATION** | ) ) ) | **Master File No. 3:25-cv-00052** |
| | ) | **Judge Crenshaw** |
| **This Document Relates To:** | ) | |
| **No. 3:25-cv-00576** | ) ) ) | **Magistrate Judge Newbern** |

**RESPONSE IN OPPOSITION TO DEFENDANT DAVID GREGORY'S**
**MOTIONS TO DISMISS**

Plaintiffs Shawn Taylor and Bryan Morris, file this Response in Opposition to Defendant David Gregory's[1] Motion to Dismiss (Doc. 70). Defendant Gregory's Motion to Dismiss should be denied because the Complaint plausibly pleads each challenged claim under governing federal and Tennessee law. In addition, Plaintiffs hereby give notice that they intend to file an amended complaint as a matter of course before the Court rules on any pending Rule 12 motion, which will supersede the current pleading and render the Motion to Dismiss moot. Plaintiffs have also made arrangements for replacement counsel to appear and assume responsibility for this matter; incoming counsel are presently obtaining certificates of good standing and preparing motions for admission to practice before the United States District Court for the Middle District of Tennessee.

**I.      Defendant Gregory Is Not Protected By Absolute Immunity Under Federal or Tennessee Law.**

Plaintiffs will combine their response to Defendant Gregory's immunity arguments in Section I(A) and Section III of his Memorandum in Support, as the arguments overlap.

---

[1] Defendant Gregory appears to assert on page 4, footnote 2, that his Motion to Dismiss is also being filed on behalf of Cristina Templet because the allegations against them both are "nearly identical." [Doc. 70-1, PageID#1317]. Accordingly, Plaintiffs direct this Response in Opposition to any purported Motion to Dismiss by Templet filed by or incorporated by reference in David Gregory's motion.

At the motion to dismiss stage, defendant legislators bear the burden of demonstrating entitlement to legislative immunity under both Tennessee law and federal law in the Sixth Circuit.

It is the defendants' burden to establish the existence of absolute legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000)(citing *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1251 (10th Cir. 1998). Defendant Gregory has failed to do so.

Defendant Gregory vastly overstates the holding of *Moses v. Roland* and also ignores its exceptions. The Court of Appeals in Moses illustrated the following:

> "Although the legislative privilege is absolute, and bars a defamation claim when it is held to apply, it is not without limits." *Miller v. Wyatt*, 457 S.W.3d 405, 410 (Tenn. Ct. App. 2014). **The privilege "'does not give a member of a subordinate legislative body the right to use his or her position as a forum for private slanders against others.'"** *Issa v. Benson*, 420 S.W.3d 23, 27 (Tenn. Ct. App. 2013) (quoting *Cornett v. Fetzer*, 604 S.W.2d 62, 63 (Tenn. Ct. App. 1980)). "Because a reason supporting the legislative privilege is to insure an uninhibited debate concerning matters before a legislative body, **it follows that such a privilege is applicable only if the defamatory remarks are made relating to matters within the scope of that body's authority**." *Miller,* 457 S.W.3d at 410 (internal quotation marks omitted) (quoting Issa, 420 S.W.3d at 27). In analyzing this issue, "our inquiry centers on the nature and scope of the statements at issue vis-a-vis [the relevant board or commission's] legislative functions." *Issa*, 420 S.W.3d at 28.

*Moses v. Roland*, No. W2019-00902-COA-R3-CV, 2021 Tenn. App. LEXIS 122, at *14-15 (Ct. App. Mar. 25, 2021)(emphasis added).

Plaintiffs Taylor and Morris have alleged that David Gregory's comments were the very "private slanders" against Taylor and Morris that are not entitled to any immunity. [See, e.g., Cmplt. ¶¶ 152-157, 289-293,

The plaintiff in *Moses* sued a commissioner who made statements during a Law Enforcement Committee mitting regarding providing security to judges, and "it was a public record at that time that Ms. Moses had pleaded guilty to the crime of stalking Judge Gardner, a Shelby County judge." *Moses* at *17. *Moses* is inapposite and has nothing to teach in the case at bar.

Defendant Gregory never addresses any of the acts that were plainly outside the scope of any legislative act, including the public interviews he provided to NewsChannel 5 outside of City Hall, or any of the comments he made after the City meetings had concluded, or any written letters he provided to Phil Williams as part of their coordinated smear.[2]

It is not a legislative act to demand that a police officer "apologize" for something he stated as a private citizen before he was hired, especially apologizing for something the police officer *never* said:

Taylor was hired as the number-two police official in the community just north of Nashville about a year after the podcast interview.

This week, Millersville City Commissioner David Gregory continued to push for Taylor to apologize to the Covenant families for his "reckless, insane ramblings."

Gregory also questioned whether Morris, who also serves as acting city manager, had known about Taylor's bizarre conspiracies regarding the tragic shooting that killed three children and three staff members in March 2023.

Doc. 1-1, PageID#325

**None of David Gregory's Defamatory Statements Were Spoken During Discussions of A Resolution or Ordinance.**

"[A] crucial test in distinguishing a legislative from administrative acts is whether the action taken (resolution or ordinance) makes new law or executes one already in existence.')." *Wills v. City of Memphis,* 457 S.W.3d 30, 38 (Tenn. Ct. App. 2014)(quoting *McCallen v. City of*

---

[2] See Index of Articles, Doc 1-1, PageID #204: Channel 5 makes the following quote: "Specifically, we need to examine whether a thorough investigation into his moral character was conducted and whether he underwent and passed a psychological evaluation as mandated," said a letter written by commissioners David Gregory and Cristina Templet." Most of David Gregory's comments were during interviews with Phil Williams outside of City Hall, see.PageID #258, 272, 282,

*Memphis,* 786 S.W.2d 633, 639 (Tenn. 1990)). In *Wills,* the court noted that when a legislative body applies existing law to reject a subdivision application, it was an administrative act, not a legislative one. Thus, most of the City business discussed by the Board, such as approving rezoning applications or any similar act would not even be considered a legislative act. As the Court held in *Wills*, only statements made by legislators concerning resolution or ordinances that "make new laws" constitute legislative acts entitled to legislative immunity.

Gregory focuses his immunity argument on his alleged "capacity as an elected commissioner to publicly inquire into potential impropriety or unprofessionalism of Assistant Chief of Police Taylor" and appears to be asserting that this was for Gregory's comments during the "comments" section at the end of City Meetings *after* City business on the agenda had concluded.

Whatever facts were present in the other cases relied upon by Gregory, they are not present in the case at bar. The Millersville City Charter vests no powers at all in any Commissioner to interfere with any employment decisions or any employee. That role is vested solely with the City Manager under the Charter. [¶ 151 of Cmplt]. There is no such "capacity as an elected official" in Millersville, and therefore each and every one of David Gregory's actions and published comments about Taylor's fitness for duty are *ultra vires* under well-established Tennessee law. The Complaint alleges that neither Gregory nor Templet had any lawful authority to take any employment action against Taylor, "rendering their conduct purely retaliatory and outside the sphere of any legislative immunity." [¶ 151 of Cmplt].

Legislative immunity provides significant protection to legislators, shielding them from liability and lawsuits arising from their *legislative activities*. Legislative activities include acts that involve policymaking or integral steps in the legislative process. Only then is absolute immunity

granted. There are notable exceptions to this immunity. If the act is administrative, such as acts involving personnel decisions or other actions not directly related to the legislative process, then legislative immunity does not apply. **Another key exception is that legislative immunity does not extend to actions that are merely casually or incidentally related to legislative affairs, such as performing errands for constituents, making appointments with government agencies, securing government contracts, preparing news releases, and delivering speeches outside the House.** *Kent v. Ohio House of Representatives Democratic Caucus*, 2021 U.S. Dist. LEXIS 183911.

Additionally, legislative immunity does not protect against actions that are administrative in nature rather than legislative *Dressler v. Winkler*, 2011 U.S. Dist. LEXIS 154236.

Defendant Gregory asserts that the Complaint contains no facts to establish that Gregory "in fact entertained serious doubts" about the truth of the statements or had a "high degree of awareness of probable falsity." [PageID#1332]. In fact, Plaintiffs plead exactly that in Paragraph 152, which is not a "legal conclusion" as Defendant states:

152.    Before publishing their statements, Gregory, Templet, Williams, and NewsChannel 5 had already obtained Taylor's personnel file from prior agencies, which unequivocally showed that he (a) passed every POST-mandated psychological examination and (b) had never been disciplined for mental-fitness issues. Each Defendant therefore knew the insinuations about Taylor's mental health were false—or, at minimum, they acted in reckless disregard of their falsity.

Throughout their Complaint, Plaintiffs plead Defendant Gregory's knowledge of falsity and the facts in support, such as in Paragraph 337 of the Complaint:

> 337.   Despite actual knowledge that Shawn Taylor never denied that the Covenant School Shooting took place, Phil Williams and NewsChannel 5 continued to press this false narrative. Chief Morris is quoted in an exchange with David Gregory, where he asks if Gregory had watched the podcast in its entirety, to which Gregory says that he had. Chief Morris then correctly stated that Shawn Taylor had not denied that the Covenant Shooting never happened. Channel 5 and Phil Williams intentionally mischaracterizes Chief Morris's truthful statement – that Shawn Taylor had never denied that the Covenant Shooting happened – into the false and defamatory statement that Morris had "downplayed" the "conspiracy cop's Covenant shooting claims" and had engaged in "ongoing denials of the facts."

Other examples of Plaintiffs' Complaint plead how David Gregory published his defamatory statements include Paragraphs 345-346:

> 345.   Williams again republishes false and defamatory statements made by Commissioner David Gregory during the June 18, 2024 Commission meeting, including that Taylor:
>
> a. Was "fired" from Millersville in 2016 for mental instability;
>
> b. Was not a canine handler;
>
> c. Had "delusions" and committed "criminal acts" like secret recordings.

346. Each of these statements is demonstrably false because:

    a. Shawn Taylor was a recognized K9 handler at Millersville, and this fact was documented and celebrated on the City's own Police Department Facebook page at the time;

    b. The allegations of instability and criminal behavior are completely unsubstantiated;

    c. The accusations were made with knowledge of falsity or reckless disregard for the truth, rendering both Gregory and Williams liable for defamation.

## II. Plaintiffs State a Claim of First Amendment Retaliation and Defendant Gregory Is Not Protected by Qualified Immunity.

## A. Qualified Immunity Framework and the Threshold "Discretionary Function" Requirement

The Supreme Court has held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)(emphasis added)).

Qualified immunity is an affirmative defense. Under Harlow, it applies, if at all, only when an official is "performing discretionary functions" of his office. The burden is on the defendant to plead and develop it. Gregory's memorandum never addresses this threshold requirement. He does not argue—much less show—that the acts alleged in the Complaint were undertaken within the scope of any discretionary governmental authority he possessed as a commissioner. That omission is dispositive at this stage.

Alternatively, and in any event, the conduct alleged is outside the performance of any discretionary governmental function. Plaintiffs do not challenge a legislative vote, the drafting of an ordinance, or any policy deliberation. They challenge a coordinated retaliatory smear campaign executed through a pre-arranged media event—Gregory's retaliatory use of a public microphone and a television camera to publish knowingly false accusations and to coerce the City Manager to terminate an employee for protected speech. That is not "governmental discretion"; it is private retaliation cloaked in official trappings.

Gregory cannot satisfy *Harlow*'s threshold requirement because he was not exercising any discretionary authority the office confers. A single commissioner has no executive power to hire, fire, discipline, or compel disclosure of confidential personnel and medical information, and no unilateral power to convene an adjudicative "hearing" to interrogate an employee. The conduct Plaintiffs allege—demanding termination, making false and defamatory accusations, demanding a public inquisition, and attempting to weaponize a pre-employment psychological assessment— falls wholly outside any discretionary function of a commissioner. It is therefore not protected by qualified immunity at the outset.

Even if a commissioner's policy debate during deliberation can be characterized as discretionary legislative activity, Plaintiffs' allegations concern something categorically different: a personal tirade during "Commissioner Comments," after agenda business, designed to force resignation/termination and to stage a televised humiliation. Gregory was not gathering facts to legislate or deliberating toward municipal policy; he was attempting to impose an executive personnel outcome by public pressure while repeating fabricated factual accusations. That is not a legislative discretionary function—it is retaliatory coercion.

Finally, qualified immunity must be analyzed act-by-act. Even if the Court were to conclude that some narrow subset of Gregory's conduct could be characterized as discretionary legislative speech, Plaintiffs allege multiple retaliatory actions outside any legitimate discretionary function—fabricated factual accusations, demands for termination, and an attempted public inquisition into confidential matters orchestrated with media. At minimum, those allegations preclude dismissal on qualified-immunity grounds at Rule 12.

## B.     The Qualified Immunity Test and the Rule 12 Standard

When analyzing qualified immunity, courts apply the "Saucier two step" analysis, asking (1) whether a constitutional right has been violated; and (2) whether that right was clearly established—though reviewing courts need not proceed in this order. See *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ("[W]hile the sequence set forth [in Saucier] is often appropriate, it should no longer be treated as mandatory."). "[A court] may answer these questions in any order." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021)(citing Pearson, 555 U.S. at 236). The latter "clearly established" prong analyzes whether it was sufficiently clear that a reasonable officer would understand their actions violate a right. *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 193 L. Ed. 2d 255 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)).

"[I]t is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983." *Campbell v. Mack*, 777 F. App'x 122, 136 (6th Cir. 2019) (quoting *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) (citing cases)).

At the pleading stage, the Court must accept Plaintiffs' well-pled factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. Where the complaint plausibly alleges

retaliation for protected speech and identifies clearly established law putting a reasonable official on notice, dismissal on qualified-immunity grounds is improper. See, e.g., *Bloch v. Ribar* (reversing dismissal and holding qualified immunity unavailable on a First Amendment retaliation claim at the 12(b)(6) stage).

## C. Gregory's "Political Dispute / Fitness for Duty" Framing Mischaracterizes the Complaint.

Gregory cites to isolated Paragraphs in the Complaint, 151 to 154, and asserts that these allegations "show disagreement over Plaintiff Taylor's fitness for duty, a political issue, not a First Amendment violation." [PageID#1319]. He repeatedly refers to his false and defamatory publications about Taylor's private political speech before his hiring as "political disputes." They were not. Neither Shawn Taylor nor Bryan Morris were elected officials. They never were part of any "political debate."

Gregory's demand to interrogate a police officer using his HIPAA-protected pre-employment psychological evaluation is not a legitimate "political dispute." Nor does Gregory avoid liability by emphasizing he was not Taylor's employer. Defendant Gregory claims that, because he was not Taylor's employer, and he did not have authority to terminate Taylor, there can be no adverse action and therefore no First Amendment retaliation claim. That argument misstates the law and ignores the adverse actions pled throughout the Complaint.

## D. Plaintiffs Have Pled Numerous Adverse Actions Sufficient to State First Amendment Retaliation

(1) **Protected speech.** Defendant Gregory does not seriously challenge the character or nature of Taylor's podcasts and commentary, which were core political speech made years before he was Millersville's Assistant Chief, while off duty and in his personal capacity" [Complt. ¶ 149],

when he was unequivocally a private citizen and often times was criticizing public officials and public issues (e.g., national figures and public corruption)—where speech is at the "highest rung" of First Amendment protection. *Connick v. Myers*, 461 U.S. 138, 145 (1983); *Rudd v. City of Norton Shores*, 977 F.3d 503, 513–14 (6th Cir. 2020); *Anders v. Cuevas*, 984 F.3d 1166, 1184–85 (6th Cir. 2021). The Complaint expressly alleges that NC5 and cooperating officials distorted that speech to punish it. (Cmplt. ¶¶121–147, 176–183, 294–301).

(2) **Adverse action.** "The term 'adverse action' arose in the employment context and has traditionally referred to actions such as 'discharge, demotions, refusal to [hire], nonrenewal of contracts, and failure to promote.'" *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d 378, 396 (6th Cir. 1999)(en banc)). In the First Amendment context, however, we have held that "any action that would deter a person of ordinary firmness from exercising protected conduct will [constitute a sufficient adverse action], which may include harassment or publicizing facts damaging to a person's reputation." *Id*.

Other examples include the precise actions that happened to Plaintiffs:

- threats to Plaintiffs' economic livelihood, *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012)(citing *Fritz*, 592 F.3d at 728);

- being defamed, *Fritz* at 726;

- enduring a search or seizure of property, *Wurzelbacher* at 584(citing *Bell v. Johnson*, 308 F.3d 594, 604-05 (6th Cir. 2002);

  - Both Plaintiffs have, in fact, endured searches and seizures. See, e.g., ¶¶ 438-454, discussing in detail the "TBI Raid" of City Hall and Shawn Taylor's home.

- "Public disclosure of intimate or embarrassing information" *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir. 1998).

- o David Gregory and Cristina Templet's threats and demands of releasing HIPAA protected information in a pre-employment psychological screening and quite literally interrogating Taylor about its contents; [Cmplt. ¶¶ 149-152].

- The threat of a continuing governmental investigation, *Wurzelbacher* at 584.

  - o Shawn Taylor and Bryan Morris were actually subjected to a continuing government investigation.

In sum, public officials can commit actionable retaliation by leveraging their office to orchestrate investigation and discipline, demanding termination on camera, and initiating punitive public hearings designed to chill and punish protected speech—especially where the retaliation includes threats to expose intensely private information. Moreover, "[r]etaliation for the exercise of constitutional rights is itself a violation." *Thaddeus-X*, 175 F.3d at 394. The Complaint pleads precisely that kind of retaliation: Defendant Gregory allegedly engaged in a campaign of harassment and concrete threats/actions capable of deterring a person of ordinary firmness, including an illegal public inquisition into Taylor's "moral character," demands to expose confidential psychological records, coordinated calls for resignation/termination, and stigmatizing publications intended to destroy employment and professional standing. *Thaddeus-X,* 175 F.3d at 397 (campaign of harassment actionable); *Block v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (publicizing damaging allegations); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (threats alone may suffice); *Kubala v. Smith*, 984 F.3d 1132, 1140 (6th Cir. 2021) (See, e.g., Cmplt. ¶¶150, 153–157, 158–167, 192–204, 277–286, 294–301).

## II.     PLAINTIFFS HAVE PLEAD VALID RICO CLAIMS.

### A.     Plaintiffs Plead Injury to their Business and Property.

Defendant Gregory claims that Plaintiffs did not plead damages to their business or property. Defendants claim no loss of employment or wages. However, Paragraph 529 alleges "Plaintiffs have incurred losses to their property and tangible business interests recoverable under the RICO Act." These are the damages recoverable under RICO, and Plaintiffs have specifically pleaded them in the foregoing Paragraph. Plaintiffs were not even required to specifically plead such damages, as they do not constitute "special damages" under Fed. R. Civ. P. 9(g) that are "unusual claims for damages," but they nonetheless did exactly that.

Gregory's argument improperly treats Plaintiffs' damages allegations as if Plaintiffs must prove the full measure of treble-damage causation at the pleading stage. The Rule 12(b)(6) inquiry is whether Plaintiffs plausibly alleged a concrete financial injury to "business or property" and plausibly alleged proximate causation—i.e., that the alleged RICO conduct was "a substantial and foreseeable cause" of the injury and that the relationship between the wrongful conduct and the injury is "logical and not speculative." *In re ClassicStar*, 727 F.3d at 487. Plaintiffs have done so.

First, the Complaint pleads tangible economic losses and property-related harms, not merely personal injuries. The business/property component of § 1964(c) requires a concrete financial loss; Plaintiffs plead losses to tangible business interests and property, and they plead out-of-pocket expenditures incurred as a direct and foreseeable result of Defendants' alleged racketeering conduct. (See, e.g., DE 1 ¶¶ 526–29.) Even if Defendants dispute the extent or amount of those losses, that is a merits question not resolvable on a motion to dismiss.

Second, Gregory's "no loss of employment or wages" argument is a *non sequitur*. Section 1964(c) does not require termination as a prerequisite to RICO injury. Plaintiffs plead that

Defendants' conduct foreseeably forced career-altering choices, inflicted concrete financial harm, and caused losses to tangible business interests and property. Whether Plaintiffs ultimately separated from employment by resignation or retirement does not negate proximate cause at the pleading stage where Plaintiffs allege that separation and its economic consequences were the predictable culmination of the racketeering-driven pressure campaign. *In re ClassicStar* at 487.

Third, Gregory attempts to recast Plaintiffs' economic injuries as mere "reputational harm" and "false light" damages. That argument again improperly collapses pleading into proof. Plaintiffs do plead reputational harms, but they also plead concrete financial harms and tangible losses. At minimum, where a complaint pleads at least one cognizable "business or property" injury proximately caused by the alleged RICO violation, dismissal is not warranted simply because the complaint also alleges non-RICO-personal harms in parallel.

## B. Defendant's Reliance on *Med. Marijuana, Inc. v. Horn* Is Misplaced and Actually Confirms Plaintiffs' Theory of Recoverable Economic Loss.

Gregory argues that the Supreme Court "recently made clear" that "§ 1964(c) does not allow recovery for all harms" and implies Plaintiffs' economic losses are excluded as personal injuries. But *Med. Marijuana, Inc. v. Horn* holds the opposite of the categorical exclusion Defendants propose. The Supreme Court held: "Under civil RICO, §1964(c), a plaintiff may seek treble damages for business or property loss even if the loss resulted from a personal injury." *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 939 (2025).

Thus, even if Defendants attempt to characterize parts of Plaintiffs' harm as "personal," Horn forecloses the argument that business/property losses are automatically barred merely because they are connected to personal injuries. *Horn* confirms Plaintiffs may recover for concrete economic losses—losses to property and tangible business interests—so long as Plaintiffs

plausibly allege they were caused "by reason of" the RICO violation. 18 U.S.C. § 1964(c); *In re ClassicStar*, 727 F.3d at 487.

## C.    Plaintiffs Adequately Plead "By Reason Of" Causation and Proximate Cause.

Defendant Gregory argues Plaintiffs' injuries are "really" defamation damages and therefore not caused by "criminal predicate acts." That is an overreading. The Complaint pleads a racketeering pattern in which defamatory publications and televised pressure tactics were not standalone torts, but tools and overt acts used to advance the enterprise's unlawful objectives— including intimidation, coercion, and interference with legitimate governmental operations—and to achieve foreseeable financial and property harms to Plaintiffs. Whether Plaintiffs ultimately prove the full causal chain is a merits question; at the pleading stage, Plaintiffs must plausibly allege that Defendants' wrongful conduct was "a substantial and foreseeable cause" of Plaintiffs' business/property injuries and that the relationship is "logical and not speculative." *In re ClassicStar*, 727 F.3d at 487. Plaintiffs have done so through detailed factual allegations of coordinated conduct, escalation, and foreseeable economic consequences. (See, e.g., DE 1 ¶¶ 121– 147, 176–204, 277–301, 484–91, 519–36.)

## D.    Plaintiffs Plead Gregory's Participation in Conducting the Enterprise's Affairs.

Gregory next invokes the "operation or management" test from *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) and cites *Whaley v. Auto Club Ins. Ass'n*, 129 F.3d 1266, 1997 WL 720451, at *3 (6th Cir. Nov. 12, 1997) to argue Plaintiffs fail to plead that Gregory directed the enterprise's affairs.

That argument ignores the Complaint's Gregory-specific allegations. Plaintiffs do not rely on a bare collective label; they plead that Gregory played an active role in advancing the enterprise's objectives by using his official position, public meetings, and coordinated media

actions to apply coercive pressure, initiate or demand punitive proceedings, and amplify stigmatizing accusations with the foreseeable purpose and effect of inflicting economic and property harms. These are not passive "association" allegations; they describe conduct consistent with directing or helping direct the enterprise's affairs as required by *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). At the pleading stage, Plaintiffs are not required to prove the full internal hierarchy of the enterprise; they must plausibly allege participation in conducting its affairs. They have done so as to Gregory.

Nor does *Wyndham Vacations Resorts, Inc. v. The Consulting Grp., Inc.,* No. 2:12-CV-00096, 2013 WL 3834047, at *6-8 (M.D. Tenn. July 23, 2013) impose a heightened "180 communications" pleading requirement. *Wyndham* is an example of robust pleading, not a minimum threshold. Rule 8 requires plausibility, not exhaustive proof-by-appendix of every internal communication—particularly where many communications and coordination facts are uniquely in Defendants' possession and will be the subject of discovery.

## E. Plaintiffs Plead a Pattern of Racketeering Activity and Gregory's RICO Liability.

Gregory argues Plaintiffs fail to plead that he committed at least two predicate acts within ten years and that the Complaint's predicate-act allegations are "generally directed at all 38 defendants." *Brown v. Knoxville HMA Holdings, LLC*, 447 F. Supp. 3d 630, 645 (M.D. Tenn. 2020) (citing 18 U.S.C. § 1961(5)). But the Complaint pleads (1) the enterprise, (2) a pattern and continuity, and (3) Gregory's knowing participation in conduct advancing the enterprise's affairs and objectives. At the pleading stage, Plaintiffs need not prove that every Defendant personally executed every predicate act; Plaintiffs must plausibly allege that the enterprise operated through a pattern of racketeering and that Gregory conducted or participated in the conduct of the enterprise's affairs through that pattern. 18 U.S.C. § 1962(c).

Gregory's argument also improperly collapses § 1962(c) and § 1962(d). Even if Gregory disputes the sufficiency of Plaintiffs' § 1962(c) allegations, the conspiracy claim under § 1962(d) independently survives where Plaintiffs plausibly plead "the existence of an illicit agreement to violate the substantive RICO provision." *Grubbs v. Sheakley Grp., Inc*., 807 F.3d 785, 805-06 (6th Cir. 2015); *Dell'Aquila v. Nat'l Rifle Ass'n of Am*., No. 3:19-CV-00679, 2025 WL 920275, at *7 (M.D. Tenn. Mar. 26, 2025). As courts in this District have recognized, the agreement element may be shown by circumstantial facts plausibly suggesting coordination and a shared unlawful objective. See e.g., *Foster v. Amarnek*, No. 3:13-516, 2014 WL 1961245, at *5-7 (M.D. Tenn. May 14, 2014).

Finally, Gregory's effort to eliminate Plaintiffs' "business or property" injuries by labeling them "legal fees" and "reputational harm" overstates the law and ignores Sixth Circuit authority recognizing that concrete out-of-pocket costs incurred as a direct result of racketeering conduct can qualify as a RICO injury. See, e.g., *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 262 (6th Cir. 2014) (recognizing attorney's fees incurred in connection with wrongful proceedings as a cognizable injury where proximately caused by alleged racketeering conduct).

## F.     Plaintiffs Have Plead the Existence of a RICO Enterprise.

Gregory argues Plaintiffs fail to plead an enterprise because the Complaint does not show an "ongoing organization," a "continuing unit," or an entity "separate from the pattern of racketeering activity." *Gratton v. Cochran,* No. 3:19-CV-00267, 2019 WL 1787665, at *3 (M.D. Tenn. Apr. 24, 2019) (citing *VanDenBroeck v. CommonPoint Mortg. Co*., 210 F.3d 696, 699 (6th Cir. 2000), *overruled in part, on other grounds, by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008)). He further relies on *Boyle v. United States*, 556 U.S. 938, 946 (2009), as cited in *Smith v. Smith*, No. 2:15-CV-241, 2016 WL 4703834, at *4 (E.D. Tenn. Sept. 8, 2016), to argue

Plaintiffs have not pled the enterprise's "purpose, relationships, and longevity," and cites *Dixit v. Smith*, No. 2:21-CV-02602-JTF-ATC, 2023 WL 6150816, at *8 (W.D. Tenn. Aug. 11, 2023) for the proposition that a one-off conspiracy is not a RICO enterprise.

Those standards are met here. Plaintiffs plead an association-in-fact enterprise spanning identifiable groups and individuals with a common purpose, coordinated relationships, and longevity sufficient to pursue the enterprise's objectives. Plaintiffs plead continuing coordinated actions over time, not a single isolated incident. And Plaintiffs plead that the enterprise existed to accomplish objectives beyond any single publication—namely, to use coordinated pressure tactics and institutional leverage to punish protected speech, force personnel outcomes, and protect and perpetuate the enterprise's broader unlawful activity. At the pleading stage, that is sufficient to allege "an ongoing organization," "function[ing] as a continuing unit," with the required "structural features" under Boyle and the Sixth Circuit cases Gregory cites.

**G.     Plaintiffs Have Plead RICO Conspiracy Under § 1962(d).**

To state a RICO conspiracy claim, Plaintiffs must "successfully allege all the elements of a RICO violation, as well as . . . the existence of an illicit agreement to violate the substantive RICO provision." *Grubbs v. Sheakley Grp., Inc.,* 807 F.3d 785, 805-06 (6th Cir. 2015); *Dell'Aquila v. Nat'l Rifle Ass'n of Am.*, No. 3:19-CV-00679, 2025 WL 920275, at *7 (M.D. Tenn. Mar. 26, 2025). Plaintiffs plead precisely that: a coordinated scheme among Defendants, including Gregory, to pursue shared unlawful objectives through coordinated acts over time, with foreseeable business/property injuries resulting from that scheme. At minimum, those allegations plausibly plead the "illicit agreement" required by Grubbs and the District cases applying it, and therefore Gregory's request for dismissal of the § 1962(d) claim should be denied.

**IV.     Plaintiffs' State Law Claims for Defamation, Defamation by implication or Innuendo, and False Light Are Plausibly Pled And Should Not Be Dismissed.**

Gregory argues that Plaintiffs' defamation-related claims must be dismissed because (i) the statements concern a "public official" or a "matter of public concern," (ii) Plaintiffs therefore must plead actual malice under *Charles v. McQueen*, 693 S.W.3d 262, 269 (Tenn. 2024), and (iii) Defendant Gregory cites to Paragraphs 550-54, and Paragraphs 152, 293, 541, 549-50, 557, claiming they are "bare assertions," or "mere recitals of the actual malice standard." Neither premise is a proper basis for dismissal at Rule 12, and the Complaint alleges extensive, concrete facts showing defamatory falsity and actual malice.

**A.     The Complaint pleads multiple verifiable false statements and defamatory implications—these are not nonactionable "opinions."**

Defamation is actionable where the challenged words convey a provably false factual assertion or where the publication, by its context and juxtaposition, conveys a false defamatory meaning. The Complaint does exactly that. It alleges that Defendants repeatedly asserted, as a matter of fact, that Taylor "believes the completely bogus QAnon conspiracy theory," that he "has no evidence whatsoever," that he "imagines sinister plots," and that he "has bounced from town to town," while simultaneously insinuating criminal misuse of law-enforcement systems by asking whether Taylor "has been digging into [Williams] … using government computers or government resources." (Cmplt. ¶¶ 121–126, 133, 138–139.) These are not mere rhetorical insults; they are framed as investigative findings and are pled as materially false.

The Complaint further pleads defamation by implication and false light through deliberate packaging and juxtaposition. Defendants published the story as part of the "Hate Comes to Main Street" series and repeatedly placed Taylor (and by extension Morris) in the same series and

repository as content about neo-Nazis, KKK members, and other violent hate actors, falsely associating Plaintiffs with "white-supremacist hate groups" and "neo-Nazis" to drive outrage. (Cmplt. ¶¶ 120, 140, 146–147, 158, 167.) The pleaded "gist" and "import" of this series and its graphics and labels is that Taylor is aligned with violent extremists and is mentally unstable and professionally unfit—an implication the Complaint alleges Defendants knew to be false. (Cmplt. ¶¶ 121–123, 140–143.)

The Complaint also pleads a detailed instance of direct defamation by Gregory himself. During the June 3, 2024 Work Session, Gregory stated (among other things) that Taylor made "sarcastic remarks" about the Covenant School shooting and needed to apologize, that Taylor accused the former mayor of child trafficking, and that Taylor accused Phil Williams of being a pedophile; Gregory then demanded Taylor's resignation and told the City Manager: "You hired him. You need to fire him." (Cmplt. ¶ 289.) Plaintiffs plead these statements and implications were false. (Cmplt. ¶¶ 291–292.) Those are plainly assertions of fact or mixed fact-and-implication that are capable of being proven true or false and therefore are actionable at the pleading stage.

**B.     Plaintiffs plead actual malice with specific factual allegations, not mere labels.**

Gregory asserts Plaintiffs have merely "restate[d], in conclusory fashion, the actual malice standard." But the Complaint alleges actual malice with concrete facts demonstrating "knowledge that it was false or … reckless disregard of whether it was false or not." *Thomas M. Cooley Law Sch. v. Kurson Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014).

1.     **Possession of contradictory facts and purposeful omission.** Plaintiffs allege Defendants possessed Taylor's personnel file, including proof of the POST-mandated psychological examination clearance, yet nevertheless published and republished statements and insinuations that Taylor is mentally unfit and "dangerous" to the public. (Cmplt. ¶¶ 122,

137, 139, 152.) Plaintiffs also plead that Williams possessed full copies of the underlying podcasts—including the supporting materials displayed on-screen—yet "cherry-picked isolated quotations," stripped the context and corroboration, refused to link or provide context, and manufactured the false impression Taylor had "no evidence whatsoever." (Cmplt. ¶¶ 125–127, 132, 137, 142.)

2. **Deliberate fabrication by implication and series packaging.** The Complaint alleges Defendants knowingly inserted Taylor into the "Hate Comes to Main Street" series (neo-Nazis/KKK coverage) despite knowing Taylor had "never associated with or expressed support for any hate group." (Cmplt. ¶ 140.) It further alleges Defendants repeatedly republished, updated, and reorganized the series—updating headlines, adding fresh paragraphs and links, appending new video segments, embedding it into a searchable "Hate" repository, and blasting it across social media—to maximize reach and harm. (Cmplt. ¶¶ 144–147.) The deliberate republication and "updates" with substantive edits are pled as affirmative acts intended to reach new audiences and intensify the false association with hate groups. (Cmplt. ¶¶ 145–147.)

3. **Availability of the truth and repetition of falsity.** With respect to Gregory's own statements, Plaintiffs plead that Gregory "had no evidence for his claims and the full podcast was publicly available, showing Taylor never made the statements attributed to him," and that Gregory therefore spoke with actual malice—knowledge of falsity or reckless disregard—motivated by personal animus and a desire to force Taylor's resignation. (Cmplt. ¶ 293.) This is not a bare recitation of a legal standard; it pleads the factual basis for knowledge/recklessness: the truth was readily available, and the defamatory accusations were nevertheless asserted as fact and used to demand termination.

These allegations plausibly satisfy actual malice under *Charles v. McQueen*, 693 S.W.3d 262, 269 (Tenn. 2024). Whether Plaintiffs ultimately prove malice is for later stages; at Rule 12, the Court must accept these well-pled factual allegations as true and draw reasonable inferences in Plaintiffs' favor.

**C.      Gregory's "public concern" framing is not a dismissal vehicle because Plaintiffs plead Defendants manufactured the controversy and used falsehood to create the "issue."**

Gregory attempts to convert his own smear campaign into a "matter of public concern" and then use the heightened fault standard as a pleading trap. But Plaintiffs plead that the controversy was fabricated and amplified through staged, coordinated actions and publication tactics, including a self-referential feedback loop in which Williams' article precipitated the "hearing demand" and then the "hearing demand" was used to validate Williams' narrative. (Cmplt. ¶¶ 150, 158–166.) These are factual allegations that must be credited at Rule 12, and they foreclose dismissal based on Gregory's characterization of the dispute as an ordinary "political issue" or benign "oversight."

Accordingly, Plaintiffs have plausibly pled defamation, defamation by implication/innuendo, and false light, including factual allegations supporting actual malice. The motion to dismiss these state-law claims should be denied.

**V.      PLAINTIFFS' CIVIL CONSPIRACY CLAIM IS PLAUSIBLY PLED AND SHOULD NOT BE DISMISSED.**

Gregory argues Plaintiffs' civil conspiracy claim must be dismissed because "civil conspiracy is not itself a cause of action" and requires an underlying tort. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-CV-00469, 2020 WL 5877131, at *8 (M.D. Tenn. Oct. 2, 2020); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999). Plaintiffs do not dispute the general principle. But the conclusion does not

follow. Because Plaintiffs plausibly plead underlying torts—defamation, defamation by implication or innuendo, and false light—the conspiracy claim survives as a derivative basis of joint liability.

A.     **Plaintiffs plausibly plead underlying predicate torts, so conspiracy is not subject to dismissal.**

A civil conspiracy "'requires an underlying predicate tort allegedly committed pursuant to the conspiracy.'" *Mitchell v. Taylor*, No. 3:18-CV-01023, 2021 WL 11713923, at *5 (M.D. Tenn. Aug. 12, 2021). "Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." Id. Here, however, Plaintiffs' underlying tort claims are actionable for the reasons set forth above and throughout the Complaint. The conspiracy claim therefore cannot be dismissed on the theory that no predicate tort exists. *JRS Partners, GP*, 2020 WL 5877131, at *8.

B.     **Plaintiffs plead agreement and concerted action through detailed circumstantial allegations of coordination, timing, and mutual reinforcement.**

Gregory's remaining argument is that Plaintiffs plead only "sweeping and conclusory allegations" of a conspiracy among multiple defendants. The Complaint alleges far more than collective labels. It pleads coordination and concerted action among Gregory, Templet, and the Channel 5 Media Defendants through specific acts and timing:

- Defendants published the initial defamatory "Hate Comes to Main Street" article targeting Taylor and implying mental instability, criminal misuse of databases, and extremist affiliation. (Cmplt. ¶¶ 120–143.)

- The very next day, during the "comments" section of a City meeting, Gregory and Templet brandished Williams' broadcast and issued a written "Special Call Meeting Request" demanding a public hearing to reexamine Taylor's "moral character," compel disclosure

of his confidential psychological evaluation, and cross-examine him about his political speech and alleged "background checks." (Cmplt. ¶ 150.)

- Plaintiffs plead the City Charter vests hiring/firing/discipline authority in the City Manager, not individual commissioners, supporting the inference that the "hearing" demand was not genuine oversight but a retaliatory pressure tactic. (Cmplt. ¶ 151.)

- Plaintiffs plead Defendants possessed Taylor's personnel file and thus knew the mental-fitness insinuations were false or acted in reckless disregard. (Cmplt. ¶ 152.)

- Two days later, Defendants published a follow-up article portraying the manufactured controversy as an "ongoing scandal," quoting and elevating the commissioners' letter and using it to amplify the defamatory narrative. (Cmplt. ¶¶ 158–167.)

- Plaintiffs also plead Gregory's later June 3, 2024 on-camera tirade repeating false accusations, demanding resignation, and demanding the City Manager "fire him," as part of the same coordinated efforts with Channel 5. (Cmplt. ¶¶ 289–293.)

This is precisely the type of circumstantial pleading that plausibly alleges a common design and concerted action. At Rule 12, Plaintiffs are not required to plead every private communication among alleged conspirators; the Complaint's allegations of coordinated public acts, timing, mutual amplification, and shared objectives are enough to plausibly plead a conspiracy to commit the underlying torts.

Accordingly, because Plaintiffs plausibly plead underlying torts and plausibly plead concerted action in furtherance of those torts, Gregory's motion to dismiss the civil conspiracy claim should be denied.

**CONCLUSION**

For the foregoing reasons, and based on the well-pled factual allegations that must be accepted as true at this stage, Defendant Gregory's Motion to Dismiss should be denied in all respects. Plaintiffs have plausibly stated claims for First Amendment retaliation and conspiracy under federal law, and have plausibly pled their state-law claims for defamation, defamation by implication/innuendo, false light, and civil conspiracy. At a minimum, the Court should deny dismissal and permit this action to proceed to discovery.

Respectfully Submitted,

/s/ *Bryant Kroll*
Bryant Kroll (#33394)
The Law Office of Bryant Kroll
P.O. Box 219
Pegram, TN 37143
Ph: (615) 994-1837
Bryant@BryantKroll.com
*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon the following via this Court's electronic CM/ECF filing system to:

**SHERRARD, ROE, VOIGHT & HARBISON, PLC**
William J. Harbison II (BPR # 33330)
1600 West End Ave., Suite 1750
Nashville, TN 37203
(615) 742-4200
jharbison@srvhlaw.com

**WOMBLE BOND DICKINSON, LLP**
Ronald G. Harris (BPR # 9054)
1222 Demonbreun Street, Suite 1201
Nashville, TN 37203
(629) 250-3388
ron.harris@wbd-us.com
*Attorneys for the NewsChannel 5 Defendants*

Alex J. Brinson, Esq.
Rocklam King, Esq.
1600 West End Avenue
Suite 1400
Nashville, TN 37203
(615) 259-1450
Alex.brinson@arlaw.com
Rocky.king@arlaw.com
*Attorneys for Defendant Steve Abramowicz
and Heartland Journal, LLC*

**FORDHARRISON LLP**
Frank L. Day, Esq.
1715 Aaron Brenner Drive
Suite 200
Memphis, Tennessee 38120
(901) 291-1529
fday@fordharrison.com
*Attorneys For Defendants
Cristina Templet And
David Gregory*

Andrew W. Coffman, TN Bar #027160
PHELPS DUNBAR LLP
105 East Main Street, Suite 201
Tupelo, Mississippi 38804
Post Office Box 1220 Tupelo, Mississippi
38802-1220
Telephone: (662) 842-7907
Telecopier: (662) 842-3873
Email: andrew.coffman@phelps.com
*Attorneys for News-Press & Gazette
Company, Defendant*

This 19th Day of December, 2025.

/s/ Bryant Kroll
Bryant Kroll (#33394)